## STATE v. GARNER.

(Filed November 26, 1901.)

1. RAPE—*Attempt to Commit Rape—Evidence—Sufficiency.*

     The evidence in this case is sufficient to go to the jury upon the question of the guilt of defendant of an assault with intent to commit rape.

2. INSTRUCTIONS—*Charge—Punishment—Judgment—Trial.*

     It is not erroneous for the trial judge to inform the jury of the punishment prescribed for the crime for which the defendant is indicted.

INDICTMENT against Walter Garner, heard by Judge *W. A. Hoke* and a jury, at September Term, 1901, of the Superior Court of GASTON County.

Defendant was tried upon a bill of indictment for an

assault with intent to commit rape upon Beulah White. A concise statement of the evidence shows that Beulah White, a white girl about 14 years old, was walking along the railroad track near Gastonia, accompanied by her little brother, about 8 years old. She saw defendant, a colored man, about 19 or 20 years old, of ordinary and usual size and vigor of a man of that age, walking along the track about 200 yards ahead of her, going in the same direction she was. While so walking, defendant slowed his gait and she slowed hers; he would stop and look back, and she would stop, and he kept on stopping and looking, and folding his arms in front of him and opening them, and once shook his hat at her while looking back; she would change from the railroad track to the dirt road, which ran parallel with it, and he would likewise change and keep in front of her; she continued to change and he continued to change until she had gotten within thirty feet of him, when he turned back, and she became so frightened she turned and ran up a side-way leading towards her cousin's house, about 200 yards away, carrying her little brother by the hand; he ran after her about sixty feet, and had gotten within fifteen feet of her when he stopped; the house at this place where he stopped could not be seen on account of the corn standing in the field; defendant did not speak, nor did she; when she got to the porch of the house, she looked back and saw defendant going down the railroad; the house could not be seen from the place where she began to run, because of the thick corn standing in the field; there was a school-house (and school was being taught therein) about 200 or 300 yards from where she began to run, and in sight, and two dwelling-houses in sight where people lived. This occurred about 3 o'clock in the afternoon. There was also evidence of defendant's flight when approached by the officers that afternoon.

Defendant introduced no testimony, and demurred to the

evidence of the State upon the ground that it was not sufficient to be submitted to the jury to convict. Demurrer was overruled, and defendant excepted.

To the following parts of his Honor's charge to the jury, the defendant excepted:

"1. That if the jury are satisfied beyond a reasonable doubt that defendant acted in such a manner as to put Beulah White in reasonable fear of personal violence from him, and caused her to turn from her path and escape and avoid him, this would be an assault on his part; and if the jury are satisfied beyond a reasonable doubt that he assaulted her, and that he intended to catch her and then have sexual intercourse with her by force and violence and against her will, that he intended to overcome at all hazards any resistance she might offer, they would render a verdict of guilty as charged in the bill of indictment.

"2. That if the jury are satisfied beyond a reasonable doubt that an assault was committed by defendant as defined and stated above, and have a reasonable doubt of the felonious purpose to effect an actual sexual intercourse by force and violence and against her will as stated, they would render a verdict of not guilty of the felony, but guilty of simple assault.

"3. The jury, after being out sometime, returned into Court and requested the Court to restate the law on the different phases of the testimony, and the Court, in defining the case of simple assault, added ('inadvertently'), 'in which case the punishment could be a fine of fifty dollars or thirty days on the roads.' "

Verdict of guilty as charged in the indictment was rendered, and motion for new trial overruled. Sentence imposed, and defendant appealed.

*Brown Shepherd* represented the Attorney-General, for the State.

*A. G. Mangum,* for the defendant.

STATE *v.* GARNER.

COOK, J., after stating the case. The first two exceptions· to the charge are without merit. As to the third, we do not see that any prejudice was done the defendant by his Honor's· charge as to the junishment. In passing upon the issues in. a criminal action, the jury know that some punishment follows a verdict of guilty. They are entitled to be informed upon the law creating the offense charged, and, as the punishment prescribed is a part thereof, we see no reason why· the Court should not accurately and correctly inform them as to the same, rather than leave them to rely upon their own information.

The difficult question involved in this case is, whether the evidence and circumstances set out amount to evidence fit to go to the jury, and upon which they could reasonably find the defendant guilty of committing the assault with the intent charged.

The facts are very similar to those stated in *State v. Neely,* 74 N. C., 425, 21 Am. Rep., 496, and similar to those in *State v. Massey,* 86 N. C., 658, 41 Am. Rep., 478, but contain evidence of intent and purpose not apparent in those cases. In applying the rule that "when the act of a person may reasonably be attributed to two or more motives, the one criminal and the other not, the humanity of our law will ascribe it to that which is not criminal," we are not able to find evidence upon which we can attribute his motive to any other than to ravish the prosecuting witness. Neither does the testimony, nor any·of the circumstances or suroundings suggest any other motive; theft (or robbery) is negatived by the absence of any visible or known property to steal; no grudge or grievance or offense appears upon which to base a suspicion of malice or anger inducive to murder or personal injury; no acquaintance or social relation appears to have existed which would ·suggest the idea of romp, joke or play; nothing suggests that he was in distress and needed aid or information which could have been obtainable from the

prosecuting witness.   His conduct while walking in front of the girl indicates a flirtation not warranted by the social or racial relations of the parties.   The signs made to her by folding his arms in front of him and opening them—suggestive of hugging her—indicated amorousness, and shaking his hat at her might be considered as soliciting a kindly response. Failing in his strategy to enlist her favorable attention, which became evident to him when she turned and ran, as soon as he turned back, carrying by his hand her little brother, he pursued her, and only stopped when nearing the sight of the house to which she was fleeing.   For what purpose could he have chased her.   Was not such conduct by him evidence fit to go to the jury in determining the *intent* with which he pursued her ?   We think it was, and sustain his Honor in so ruling.

There is no evidence to establish any motive other than to do an unlawful act—none was expressed—he did not speak, nor did she.   Every person is presumed to have intended the natural consequences of his acts, and it must follow that he is presumed to have made the attempt to commit it, if the act done would be such as would apparently result in the natural course of events in the commission of the crime itself, if not prevented.   The intent was locked up in his own breast, and can only be interpreted by his acts and conduct under the circumstances and surroundings.   As assault is an *intentional* attempt by violence to do injury to another; but how is the intention to be ascertained otherwise than by the conduct? Intent is likewise an essential element in larceny, burglary, etc., which can only be ascertained by the conduct and acts and circumstances accompanying the transaction.

But it is argued that the commission of the offense charged is negatived by the location in that there was a school-house two hundred or three hundred yards away, and a dwelling-house in sight of the place where she first saw him, and that she was accompanied by her brother eight years old.   But

that is only evidence in his behalf to be considered by the jury in inquiring into his intent and purpose—the contention being that it would be unreasonable for a man to undertake to commit a capital felony so near a school-house where a school was in session, and so near dwelling-houses where people lived, when he would probably be caught and the chances of escape so limited. But the rules of reason are not employed by the criminal; if they were, crime would rarely be committed. Every element of reason is wanting in the commission of the crime which he is charged with having attempted. Even the instinct of brutes, when allowed to roam together in their natural state, forbids such an act, leaving this, the most fiendish of all offenses against nature, within the possibilities of the human-kind. There is

No Error.


DOUGLAS, J., dissenting. I can not concur in the opinion of the Court for two reasons. While I am not prepared to say that it is reversible error for the Judge to tell the jury what is the punishment of the crime, I can not agree with the Court that the jury are entitled to be informed of the punishment. The jury have nothing to do with the *quantum* of punishment. Their only province is to determine the guilt or innocence of the accused, leaving the question of punishment to be determined by the Court, within the limitations of law. In fact, I think the better practice is not to inform the jury of the possible punishment, and this seems to have been the idea of the Judge below, who says that he did so "inadvertently."

But to come to the vital point: I do not think that there was sufficient evidence to go to the jury. There is a difference in the measure of evidence in civil and criminal cases, arising equally from reason and necessity. The Court cites the cases of *State v. Neely,* 74 N. C., 425, and *State v. Massey,*

86 N. C., 658. The former, decided by a divided Court, is distinctly overruled in the latter case by a unanimous Court.

I can not better express by own views than by citing from the opinion in Massey's case, where this Court says on page 660: "In order to convict a defendant on the charge of an assault with intent to commit rape, the evidence should show not only an assault, but that the defendant intended to gratify his passion on the person of the woman, and that he intended to do so at all events, notwithstanding any resistance on her part (citing authorities). When the act of a person may reasonably be attributed to two or more motives, the one criminal and the other not, the humanity of our law will ascribe it to that which is not criminal. 'It is neither charity nor common sense nor law to infer the worst intent which the facts will admit of. The reverse is the rule of justice and law. If the facts will reasonably admit the inference of an intent, which though immoral is not criminal, we are bound to infer that intent' (citing *State v. Neely,* dissenting opinion). Every man is presumed to be innocent until the contrary is proved, and it is a well-established rule in criminal cases, that if there is any reasonable hypothesis upon which the circumstances are consistent with the innocence of the party accused, the Court should instruct the jury to acquit, for the reason the proof fails to sustain the charge. * * * There is no evidence in this case, in our opinion, from which a jury might reasonably come to the conclusion that the defendant intended to have carnal knowledge of the person of the prosecutrix at all hazards and against her will. At most, the circumstances only raised a suspicion of his purpose, and therefore should not have been left to the consideration of the jury."

I have cited thus fully from Massey's case because it is the leading case upon the subject, being a carefully considered

STATE *v.* GARNER.

opinion by a unanimous of acknowledged learning and sagacity.

In the case before us, there is no evidence whatever that the defendant ever touched the girl, that he ever spoke to her, or that he made any gesture that was in itself either lewd or obscene.  It appears that he might have caught her if he had wished to; and if he did not wish to, he was not guilty.  In our abhorrence of the crime with which he is charged, we must no lose sight of the fact that to convict an innocent man of such a crime would be in itself a terrible wrong.  Such crimes should be promptly and severely punished, but the accused should be fairly tried.  I am in favor of *punishing* criminals, but not of *making* criminals by assumption of fact or construction of law.

That the defendant is guilty of a simple assault, I do not doubt; but he does not appear to have been guilty of the crime of which he was convicted.  What was his motive I do not know.  It may have been mere impertinence, or a malicious desire to frighten a child, which we see too often in older persons.  Let it be what it may, I can not distinguish the underlying principles in this case from those in Massey's case, and hence I must dissent from the opinion of the Court.  I may be wrong, but I can never hope to have greater learning than Smith, or a more chivalrous appreciation of the highest ideals of womanhood than Ashe and Ruffin.

FURCHES, C. J.  I concur in the dissenting opinion.