STATE OF NORTH CAROLINA v. WILLIAM E. RHODES

No. 6

(Filed 15 October 1969)

**1. Criminal Law §§ 120, 135, 138— imposition of punishment — role of judge and jury**

Except in one class of cases, the presiding judge fixes the punishment for a convicted defendant within the limits provided by the applicable statute, the exception being capital cases in which the jury may reduce the penalty from death to life imprisonment. G.S. 14-17; G.S. 14-21; G.S. 14-52; G.S. 14-58.

**2. Criminal Law §§ 33, 103— facts relevant to issues — quantum of punishment**

The amount of punishment which a verdict of guilty will empower the judge to impose is totally irrelevant to the issue of a defendant's guilt and is, therefore, no concern of the jurors'.

**3. Criminal Law § 168— instructions — quantum of punishment — error**

Instructions to the jury disclosing the amount of punishment authorized by statute in noncapital cases will not always constitute prejudicial error, but the effect of such instructions must be considered in the light of the circumstances of the trial.

**4. Criminal Law §§ 111, 115— instructions on verdicts — recommendation of mercy — leniency — prejudicial error**

It is always material and prejudicial error for the trial judge to instruct the jury, either in the general charge or in response to their inquiry, that they may return their verdict with a recommendation of mercy or to intimate that he will not impose the maximum penalty if the defendant is convicted.

**5. Criminal Law § 170— remarks of judge or solicitor — possibility of parole**

Any reference by the judge or prosecuting attorney to the possibility of a parole will constitute prejudicial error.

**6. Criminal Law § 124— form of verdict — recommendation of leniency — surplusage**

Recommendations of leniency when made by the jury of its own volition, without any authority or suggestion from the court, are no part of the verdict and may be disregarded.

**7. Criminal Law §§ 103, 111, 122— instructions — quantum of punishment — prior law**

The statement in *S. v. Garner*, 129 N.C. 536, that a jury in a noncapital case is entitled to be informed as to the punishment prescribed for the offense or offenses with which a defendant is charged is expressly disapproved.

**8. Criminal Law §§ 111, 122— instructions on punishment — duty of trial court — noncapital cases**

In the absence of some compelling reason which makes disclosure as to punishment necessary in order to keep the trial on an even keel and to insure complete fairness to all parties, the trial judge should not inform the jurors as to punishment in noncapital cases; if information is requested he should refuse it and explain to them that punishment is totally irrelevant to the issue of guilt or innocence.

**9. Criminal Law § 168— error in instructions — quantum of punishment inadvertently given to jury**

When information as to punishment in noncapital cases is inadvertently given to the jury, the error will be evaluated like any other.

**10. Criminal Law §§ 111, 122; Rape § 6— inadvertent instructions on quantum of punishment — harmless error**

Although it was error for the trial judge in a prosecution for rape to tell the jury, in answer to their inquiry, the punishment for assault with intent to commit rape, the defendant was not prejudiced by the disclosure where all the evidence tended to show an accomplished rape and to prove defendant's guilt beyond a reasonable doubt and where neither the State nor defendant offered any evidence to support a guilty verdict of the lesser and included offense.

**11. Rape § 6— submission of issue of lesser offense of rape**

Where all the evidence tends to show an accomplished rape, and neither

the State nor defendant offers any evidence to support a guilty verdict of assault with intent to commit rape, the trial court is not required to submit to the jury the issue of guilt of the lesser offense.

APPEAL by defendant from *Burgwyn, E. J.,* 27 January 1969 Criminal Session of DURHAM.

Defendant was convicted of raping Annette Jones. Both are Negroes. The jury recommended that his sentence be life imprisonment, and the court entered this mandatory judgment.

Evidence for the State was plenary to establish the following facts: About 6:30 a.m. on 30 November 1968, Annette Jones, a married woman living with her husband and two children, was walking along a city street in Durham en route to her work at Duke Hospital. Defendant, a stranger, drove alongside and offered her a ride, which she refused. When he stopped his automobile and started to alight, she ran. He gave chase, caught her, and forced her into his car at knife point. In her flight she lost the heel from one of her shoes. Holding the knife at her neck, defendant drove to the terminus of a dead-end street. After raping her, he put her out and drove away. Mrs. Jones wrote his license number on the ground. A passerby took her to a telephone. She called her husband, who came and took her to the police station. Approximately two hours later defendant had been placed under arrest for rape.

The police found the shoe heel which Mrs. Jones had lost in her flight. Fibers on the prosecutrix's undergarments, when examined microscopically at the F. B. I. Laboratory in Washington, D. C., were found to be identical with those taken from defendant's trousers and coat. In the vacuum sweepings from defendant's car was one full-length hair which, when microscopically examined, matched that of Mrs. Jones.

On 10 December 1968 a letter signed "William Rhodes" was addressed and mailed to Mrs. Jones. F. B. I. experts testified that defendant's fingerprints were "lifted" from the letter and that the handwriting was identical with that of defendant. The writer said that he was truly sorry for "the dastardly act and evil deed" which had been forced upon Mrs. Jones' person. He beseeched her to forgive him for what he had done and begged her to consider the fact that he did not hurt her. The letter concluded: "I would surely owe you my life or what is left of it if you would but find it in your heart to help me. . . . I would readily be your slave if you but spare me, spare us both the embarrassment the task and toil of a trial. . . . Have mercy on me!"

Defendant did not testify. He offered evidence tending to show that he spent the night of 29 November 1968 going from one juke-box house to another; that he had been accompanied by a friend, from whom he separated about 5:30 on the morning of 30 November 1968; and that he was then intoxicated.

Judge Burgwyn instructed the jury that they could return one of five verdicts: Guilty of rape, guilty of rape with a recommendation that defendant's punishment be fixed at life imprisonment, guilty of an assault with intent to commit rape, guilty of an assault upon a female, and not guilty. After deliberating ten minutes, the jurors returned to the courtroom and inquired as to the penalty for assault with intent to commit rape. Judge Burgwyn replied as follows:

"Up to ten years imprisonment. Of course, the question of the punishment is not a question for you to determine. It is a question for the court entirely, but that would be the limit, ten years. It could be less. 'Every person convicted of assault with intent to commit rape upon the body of any female shall be imprisoned in the State's Prison not less than one or more than 15 years.' I am sorry, I made a mistake about that. That is a question for the court. It is no concern of the jury at all. All you are concerned with is a question of guilt of whatever you find him guilty of, if anything."

The jury went back to the jury room and fourteen minutes later returned with a verdict of "guilty of rape with the recommendation of life imprisonment."

*Robert Morgan, Attorney General; Ralph Moody, Deputy Attorney General, for the State.*

*Lina Lee S. Stout; A. H. Borland, for defendant appellant.*

SHARP, J.

Defendant brings forward one assignment of error and presents this single question: Did the judge commit error prejudicial to defendant when, in answer to their inquiry, he told the jurors the penalty for assault with intent to commit rape?

[1]   In this jurisdiction, except in one class of cases, the presiding judge fixes the punishment for a convicted defendant within the limits provided by the applicable statute. The exception is capital cases in which the jury may reduce the penalty from death to life imprisonment. G.S. 14-17 (murder in the first degree); G.S. 14-21 (rape); G.S. 14-52 (burglary in the first degree); G.S. 14-58 (arson). In all other instances, the jury has performed its function and dis-

charged its duty when it returns its verdict of guilty or not guilty. *State v. Davis,* 238 N.C. 252, 77 S.E. 2d 630; *State v. Howard,* 222 N.C. 291, 22 S.E. 2d 917; *State v. Matthews,* 191 N.C. 378, 131 S.E. 743.

[2]　The amount of punishment which a verdict of guilty will empower the judge to impose is totally irrelevant to the issue of a defendant's guilt. It is, therefore, no concern of the jurors'. *State v. Walls,* 211 N.C. 487, 191 S.E. 232; *State v. Williams,* 121 N.C. 629, 28 S.E. 405. *See also State v. Davis, supra,* and *State v. Matthews, supra;* 53 Am. Jur. *Trial* § 807 (1945). Ordinarily, the judge should tell them so — in appropriate judgmatical language — if they inquire of him about it. *See State v. Davis, supra,* wherein the reply which the trial judge made to a jury's inquiry was approved. As Devin, C.J., said: "The minds of the jurors engaged in the trial of a criminal case should not be diverted from the question of the guilt or innocence of the accused under the evidence by improper reference to the significance or *quantum* of punishment possible or probable upon conviction." *Id.* at 254, 77 S.E. 2d at 631; *accord, State v. Matthews, supra.*

[3]　It does not follow, however, that instructions disclosing the punishment authorized by statute will always constitute prejudicial error. The propriety and effect of such an instruction must be considered "in the light of the circumstances of the trial, as, for example, where it is made in response to remarks of counsel on the subject made in the presence of the jury." 23A C.J.S. *Criminal Law* § 1290 b. (1961). *Accord, State v. Howard,* 222 N.C. 291, 22 S.E. 2d 917, and *State v. Ward,* 222 N.C. 316, 22 S.E. 2d 922.

In both *Howard* and *Ward, supra,* after the defendant's attorney had made an erroneous argument as to the law with reference to the severity of the minimum punishment provided for embezzlement, the judge "outlined and defined to the jury" the applicable statutory provisions. Upon appeal this Court was "not disposed to hold, under these circumstances," that the defendants could take advantage of the instruction. The rationale was that defense counsel had made disclosure necessary to remove an erroneous impression "and place the cause back on an even keel so that it might be decided by the jury with complete fairness to all parties." The Court also noted that, in each case, the judge "carefully and fully cautioned the jury that they were to decide the issue upon the evidence without regard to the punishment that might or might not be imposed in the event of conviction." *State v. Ward, supra* at 321, 22 S.E. 2d at 925. In *State v. Howard, supra* at 294, 22 S.E. 2d at 919, the Court said:

"While the reading of a statute to the jury in regard to punishment is not to be commended, . . . the trial judge's ruling should be considered by the appellate Court in the light of the circumstances of the trial. The rule prevails that in order to overthrow the verdict and judgment it must be made to appear not only that the action of the trial judge complained of was erroneous, but that it was 'material and prejudicial, amounting to a denial of some substantial right.' "

**[4-6]**  It is always material and prejudicial error for the judge to instruct the jury, either in the general charge or in response to their inquiry, that they may return their verdict with a recommendation of mercy or to intimate that he will not impose the maximum penalty if the defendant is convicted. Indeed, where the law gives the judge no discretion as to punishment but fixes a mandatory penalty for the offense with which the defendant is charged, the judge is powerless to heed a jury's recommendation of mercy. In such instance, by authorizing a recommendation, the judge would not only encourage a verdict of guilty but justify the defendant's complaint that he had misled the jury into rendering it. *State v. Davis, supra; State v. Rowell,* 224 N.C. 768, 32 S.E. 2d 356; *State v. Matthews, supra.* For the same reasons, any reference by the judge or prosecuting attorney to the possibility of a parole will constitute prejudicial error. *State v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664; *State v. Hawley,* 229 N.C. 167, 48 S.E. 2d 35; *State v. Little,* 228 N.C. 417, 45 S.E. 2d 542; *see* Annot., 16 A.L.R. 3d 1137; 35 A.L.R. 2d 769. Recommendations of leniency, however, when made by the jury of its own volition, without any authority or suggestion from the court, are no part of the verdict and may be disregarded. *State v. Matthews, supra; State v. Stewart,* 189 N.C. 340, 127 S.E. 260.

In at least four cases this Court has considered the question whether the judge's disclosure or refusal to disclose penalties constituted material and prejudicial error in trials for rape and assault with intent to commit rape. In *State v. Williams,* 121 N.C. 629, 28 S.E. 405, the defendant was convicted of assault with intent to commit rape. On appeal he assigned as error the judge's refusal to tell the jury the punishment for simple assault and the felony charged. The Court noted that "this exception was properly abandoned." At the same term (September 1897) the Court considered the case of *State v. Hairston,* 121 N.C. 579, 28 S.E. 492, in which the defendant indicted for rape, was convicted of carnal knowledge of a child over ten years of age and under fourteen. The judge, in his charge, told the jury that the punishment for rape was death and, for the lesser

offense, a fine or imprisonment in the penitentiary. The Court disposed of the defendant's exception to this portion of the charge by saying: "We have at this term approved the ruling of Judge Starbuck (the trial judge in *State v. Williams, supra,*) in refusing, at the request of the jury, to give this instruction, and we do not wish to be understood as approving it in this case. But what grounds the defendants have to object to it, we are unable to see. In all probability, it saved them from the gallows."

Four years later, when the Court decided *State v. Garner,* 129 N.C. 537, 40 S.E. 6, it apparently overlooked the decisions in *Williams* and *Hairston, supra,* for it made no reference to them. Garner, convicted of an assault with intent to commit rape, was tried prior to the enactment of Chapter 193, Public Laws of 1911 (now codified as G.S. 14-33), which made an assault upon a female by a male over eighteen years of age a misdemeanor punishable in the discretion of the court. *State v. Courtney,* 248 N.C. 447, 103 S.E. 2d 861. The trial judge, therefore, could not submit that issue. (Were Garner tried today it seems clear that the evidence against him would sustain only a verdict of an assault upon a female.) The judge instructed the jury to return a verdict of guilty of assault with intent to commit rape, simple assault, or not guilty. The jury, after being out some time, returned to ask the judge "to restate the law on the different phases of the testimony." In redefining simple assault the judge informed the jury that "the punishment could be a fine of fifty dollars or thirty days on the roads."

Upon appeal, a majority of the Court could see no prejudice to the defendant from his Honor's charge as to punishment. Cook, J., writing the opinion, said the jury knew that some punishment follows a verdict of guilty. "They are entitled to be informed upon the law creating the offense charged, and, as the punishment prescribed is a part thereof, we see no reason why the Court should not accurately and correctly inform them as to the same, rather than leave them to rely upon their own information." Douglas, J., joined by Furches, C.J., dissented upon the ground that there was insufficient evidence to go to the jury on the felony charged. Although not prepared to say that it was reversible error for the judge to tell the jury the punishment for a crime, they registered their disagreement with the majority's statement that the jury are entitled to be informed as to punishment. "The jury," wrote Justice Douglas, "have nothing to do with the *quantum* of punishment. Their only province is to determine the guilt or innocence of the accused, leaving the question of punishment to be determined by the Court within the limitations

of law. . . . [T]he better practice is not to inform the jury of the possible punishment. . . ."

In *State v. Green,* 246 N.C. 717, 100 S.E. 2d 52, the defendant was indicted for rape. When a juror asked the punishment for assault with intent to commit rape, the judge replied that it would be in the discretion of the court, the maximum punishment being fifteen years. The defendant was convicted of an assault with intent to commit rape. He appealed, assigning that disclosure as error. The Court disposed of the assignment without discussion, saying merely, "This assignment of error is overruled upon the authority of *State v. Garner,* 129 N.C. 536, 40 S.E. 6."

In *State v. Green, supra,* and *State v. Hairston, supra,* each defendant was indicted for rape and, in both cases, after being informed of the matter of punishment, the jury returned a verdict of guilty of a lesser, included offense. Obviously, therefore, no prejudice resulted to the defendant from the disclosure — quite the contrary as the Court noted in *State v. Hairston, supra.* Therefore, in *Green,* it was not necessary for the Court to rely upon *Garner;* the facts called for the rationale of *State v. Hairston, supra.*

**[7]** In *Garner's* case, after being informed that the penalty for simple assault was only thirty days, the jury returned a verdict of guilty of assault with intent to commit rape, the only other verdict of guilty which they could render upon the charge. Today, sixty years after *Garner* was decided, it seems clear that the judge's disclosure dictated the verdict. The defendant, by most reprehensible conduct, had frightened a fourteen-year-old girl, causing her to abandon her path and flee from him. The jury obviously did not think that thirty days was adequate punishment for what he had done. So far as our research has disclosed, the opinion in *State v. Garner, supra,* contains the only statement in our reports that a jury in a noncapital case is entitled to be informed as to the punishment prescribed for the offense or offenses with which a defendant is charged. This statement is expressly disapproved.

**[8, 9]** Jurors, as every trial judge knows, are always interested in the consequences of their verdict. As laymen, it is hard for them to understand that they have nothing to do with punishment. When they ask the judge the direct question he wonders whether it is better to give them the correct information and tell them to disregard it (thus making sure they do not act upon misinformation!) or to refuse to inform them and tell them at the same time that punishment has no bearing upon the guilt or innocence of the accused. There is, of course, no entirely satisfactory solution to the problem posed.

However, the most satisfactory one seems to us to be this: In the absence of some compelling reason which makes disclosure as to punishment necessary in order "to keep the trial on an even keel" and to insure complete fairness to all parties, the trial judge should not inform the jurors as to punishment in noncapital cases. If information is requested he should refuse it and explain to them that punishment is totally irrelevant to the issue of guilt or innocence. When, however, such information is inadvertently given, the error will be evaluated like any other. *State v. Howard, supra.*

**[10, 11]** In this case, it was error for the trial judge to tell the jury the punishment for assault with intent to commit rape, but we can perceive no prejudice to defendant from the disclosure. After erroneously stating that the maximum punishment was ten years, the judge read to the jury the statute which fixed the punishment at fifteen years (G.S. 14-22); so they could not have been misled as to the *quantum* of punishment. All the evidence tended to show an accomplished rape and to prove defendant's guilt beyond a reasonable doubt. Neither the State nor defendant offered any evidence upon which a verdict of guilty of the lesser and included offense of assault with intent to commit rape could have been based. The judge was not required to submit that issue to the jury, and a request to do so would have been properly refused. *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481; *State v. Jones,* 249 N.C. 134, 105 S.E. 2d 513; *State v. McNeely,* 244 N.C. 737, 94 S.E. 2d 853; *State v. Church,* 231 N.C. 39, 55 S.E. 2d 792. Upon the facts of this case we have no apprehension that defendant was prejudiced by the jury's knowledge of the penalty for a crime of which there was no evidence.

No error.