STATE OF NORTH CAROLINA v. CLAUDE ELBERT SANDERS

No. 76

(Filed 15 December 1971)

1. **Criminal Law §§ 53, 99; Homicide § 15— cause of death — pathologist's testimony — court's rephrasing of question by solicitor**

    In this homicide prosecution, the trial court did not err in reframing for clarification purposes the solicitor's question to the pathologist who autopsied the body as to what he found to be the cause of death and in allowing the pathologist to testify as to the cause of death.

2. **Homicide § 19— requiring defendant to show scars to jury**

    In this homicide prosecution in which defendant testified that the deceased was cutting him with a razor and that he shot deceased in self-defense, the trial court did not err in directing defendant to comply with the solicitor's request on cross-examination that he remove his shirt and undershirt and show the jury any scars left as a result of the cuts.

3. **Criminal Law § 154— unavailability of transcript of defendant's testimony and court's charge**

    Defendant is not entitled to a new trial by reason of the unavailability of the transcript of defendant's direct testimony and the court's charge, which had disappeared from the court reporter's records, where defendant has failed to allege any error in the exclusion of any material evidence or in the charge, and the two defense attorneys and the trial judge are alive and available so that the case on appeal could have been prepared from the attorneys' recollections of defendant's testimony and the charge, and if the solicitor objected thereto, the trial judge could have settled the case on appeal.

---

State v. Sanders

---

**4. Criminal Law § 167— presumption of regularity in the trial**

There is a presumption of regularity in a criminal trial, and in order to overcome that presumption matters constituting material and reversible error must be made to appear in the case on appeal.

**5. Criminal Law § 154— case on appeal — settlement by court**

There is no duty on the court to settle a case on appeal unless there is a disagreement between the solicitor and counsel.

**6. Criminal Law § 161— necessity for assignments of error**

Error otherwise than upon the face of the record proper must be made to appear and must be the subject of an assignment.

APPEAL by defendant from *Falls, J.,* November 30, 1970 Session, GASTON Superior Court. The appeal was docketed in the Court of Appeals and transferred here for initial review under our order dated July 31, 1970.

This is a criminal prosecution in which the defendant, Claude Elbert Sanders, was indicted for first degree murder in the killing of Isaac James Adams. The indictment, proper in form, fixes October 3, 1970, as the date of the killing. At the time of the arraignment, the solicitor announced the State would not seek a conviction of the capital felony, but for murder in the second degree or manslaughter as the evidence might warrant. The defendant through court-appointed counsel, L. B. Hollowell, Jr. and Robert E. Gaines, entered a plea of not guilty.

The State's evidence disclosed that on October 3, 1970, Doris Adams, wife of the deceased, Isaac James Adams (I. J.); Cora Mills, the defendant's girl friend; and the defendant were in the home of Leroy Leach. The evidence indicated they were drinking. An altercation developed in which the defendant struck both Doris and Cora with his fists. Leroy seems to have objected and the visitors left the house. At the road nearby, Doris and the defendant continued their combat. She ripped his shirt and scratched him with her fingernails. Contact with his fist brought blood to her face.

It appears by inference that someone notified the deceased. At any rate, he soon appeared on the scene accompanied by Charles Currence and Robert Smith. Doris Adams and the defendant, at the time, were "arguing, jawing at each other." The Currence vehicle stopped and all its occupants got out. The picture is hazy as to how the altercation developed. One eyewitness said that he saw the deceased and the defendant close

State v. Sanders

together. "I heard two gunshots first and then I heard three
or four more. . . . I. J. . . . was walking away from Claude.
He fell on the ground. . . . I didn't see nothing in I. J.'s hand."
Another witness (Currence) said that the deceased was running
away when the last four shots were fired. "I took I. J. to the
hospital and he was dead when we got there."

Dr. Edward Kelman, a pathologist, performed an autopsy.
He testified that he found four bullet wounds on the deceased.
One bullet had passed entirely through the body. Three others
had entered from the back and had lodged under the skin cover-
ing the chest. These bullets were .38 caliber. Two had penetrated
the lungs causing massive hemorrhage and death.

The defendant objected to the testimony of the pathologist
as to the cause of death. On cross-examination the pathologist
testified blood analysis disclosed a high alcoholic content.

The defendant testified as a witness. The transcript of his
direct examination is not available for the reason hereinafter
explained. However, his cross-examination is in the record. The
cross-examination disclosed that at the time he shot the deceased,
the deceased was trying to cut him with "the shaving kind
of razor, with a white handle." He admitted he and Doris had
a difficulty at Leroy's and that they continued to the road.
While they were in a scuffle both of them fell. She said: "Go get
I. J. so he can kill the son-of-a-bitch. That was supposed to have
been me. . . . I pushed her down the bank and we both fell down
there." At this juncture the Currence car stopped, the deceased,
Currence, and Robert Smith got out. "I heard Doris say three
times, 'Cut him! Cut him! Cut him!' . . . All right, I first
shot. . . . I shot up in the air twice. After the shooting, . . . I
throwed my gun away and went to the police station."

The jury returned a verdict finding the defendant guilty
of manslaughter. From the judgment that he serve a prison
sentence of not less than twelve nor more than fifteen years, he
gave notice of appeal. The court appointed defendant's trial
attorneys to prosecute his appeal. On defendant's application,
the court extended the time for filing the case on appeal and
directed the court reporter to furnish defense counsel with a
transcript of the court proceedings. At the time the court re-
porter began preparing the transcript, she discovered the
defendant's direct testimony and the court's charge had mys-

teriously disappeared from her records. She notified the court. Part of her affidavit is here recorded.

" . . . After being notified that the defendant wished to appeal to the North Carolina Court of Appeals, I discovered that my complete Stenographic record had disappeared in spite of my normal procedures of filing my records. This is the only record that has ever disappeared during my reporting career of approximately thirty years.

The partial tape recording of the trial included all trial proceedings except the direct testimony of Claude E. Sanders and the Judge's Charge and motions made at the conclusion of the trial.

Due to the disappearance of my record, I have not been able to deliver to the defendant's attorneys and the Solicitor a transcript of the direct testimony of the defendant, Claude E. Sanders, and the Judge's Charge, and motions made at the conclusion of the trial."

The court found facts as follows:

" . . . (T)hat Opal W. Blair reported the trial by means of a stenographic machine and also by means of a tape recording of a portion of the trial proceedings; that Claude Elbert Sanders, the defendant, testified in his own behalf at his trial, and that the defendant's attorneys made motions at the conclusion of the trial; that after being notified that the defendant wished to appeal the jury's verdict of guilty for the crime of manslaughter, Opal W. Blair discovered that her complete stenographic record had disappeared in spite of normal procedures of filing her records; that this is the only record of Opal W. Blair that has ever disappeared during her reporting career of approximately thirty years; that the partial tape recording of the trial reported by Opal W. Blair included all trial procedures except the direct testimony of Claude Elbert Sanders, the Judge's Charge, and motions made at the conclusion of the trial; that due to the disappearance of her records, Opal W. Blair has been unable to deliver to the defendant's attorneys and to the Solicitor a transcript of the direct testimony of the defendant, Claude Elbert Sanders, the Judge's Charge, and motions made at the conclusion of the trial; that the defendant's attorneys and

the Solicitor have therefore been unable to secure a transcript of the direct testimony of the defendant, Claude Elbert Sanders, the Judge's Charge, and the motions made at the conclusion of the trial."

*Robert Morgan, Attorney General by Millard R. Rich, Jr., Assistant Attorney General, for the State.*

*Robert E. Gaines, L. B. Hollowell, Jr., and Mark Galloway for defendant appellant.*

HIGGINS, Justice.

[1] The defendant assigns as error the failure of the court to sustain his objection to the evidence of Dr. Kelman who performed the autopsy. The court found Dr. Kelman to be a medical expert and a qualified pathologist. When the solicitor asked Dr. Kelman what he found to have been the cause of death, the defendant objected. Without ruling on the objection, the court reframed the question and the doctor answered that he found four bullet wounds in the body of I. J. Adams, one of which had passed entirely through the body. Three other bullets had penetrated from the back and lodged under the skin of the chest. Two of these bullets passed through his lungs causing massive hemorrhage and death.

Charles Currence, a witness to the shooting, testified the deceased was running away when the defendant fired the last four shots. He took I. J. to the hospital. He was dead on arrival.

The defendant objected to the court's question and to the testimony as to the cause of death. The court's question was clarifying. The answer of the doctor was material and competent. The objection is not sustained.

[2] During the defendant's cross-examination, he testified the deceased was cutting him with a razor and he began shooting in self-defense. The solicitor on cross-examination asked him to remove his shirt and undershirt and show the jury any scars left as a result of the cuts. Defense counsel objected. The court overruled the objection and directed the defendant to comply with the solicitor's request. The State had offered evidence the deceased was unarmed. The defendant claims he was being cut with a razor-like instrument. The absence or presence of scars would be material on the defendant's plea of self-defense. The exception is not sustained.

[3] The plaintiff placed his main reliance for a new trial on the defective condition of the stenographic report of the trial proceedings. The reporter's affidavit and the court's findings of fact disclose the reasons for the absence of the defendant's direct testimony and the court's charge. To be entitled to a new trial, surely the defendant and his counsel should suggest more than the failure of the record to show the exact words of his direct testimony. The defendant is alive and available. He is now represented by the two trial attorneys who placed him on the stand and conducted his direct examination. They should know whether the court excluded from the jury any of the defendant's material testimony. If so, they should be able to recall its substance and note it in the case on appeal. The erroneous exclusion of material evidence is, however, not even suggested. All that is claimed is that it is absent.

It is worthy of note in this connection that the defendant's cross-examination is reported in full. The admissions on cross-examination tend to show that the essentials of the State's evidence are not challenged by defense testimony. The defendant's own admissions would appear to be sufficient to take the case to the jury. The defendant has failed to show, or even allege, any error in the admission of evidence. While his direct testimony is not in the record, the jury heard all he said.

The only objection with respect to the charge is that the record of it is not in the hands of defense counsel. They heard the charge the judge gave. Both they and the judge are alive and available. Before a new trial should be ordered, certainly enough ought to be alleged to show that error was probably committed. If defense counsel even suspect error in the charge, they should set out in the record what the error is. If the solicitor does not object, their's becomes the case on appeal. If he does object, the court could then settle the dispute. The appellate court would then have something tangible upon which to predicate a judgment. The material parts of a record proper do not include either the testimony of the witnesses or the charge of the court. *State v. Tinsley,* 279 N.C. 482, 183 S.E. 2d 669.

[4, 5] After all, there is a presumption of regularity in the trial. In order to overcome that presumption it is necessary for matters constituting material and reversible error to be made to appear in the case on appeal. Not even a suggestion of error appears in this record. The failure to include the court's charge

is by no means fatal. *State v. Tinsley, supra.* There was no duty on the court to settle a case on appeal until a disagreement. *Hall v. Hall,* 235 N.C. 711, 71 S.E. 2d 471.

The authorities cited by defendant are not applicable here. In *State v. Huggins,* 126 N.C. 1055, 35 S.E. 606, the defendants were convicted of murder in the second degree. The only question involved in the appeal was the sufficiency of the evidence to survive the State's motion to dismiss. In settling the case on appeal, the trial judge ordered that the entire testimony be made a part of the record. Thereafter the record containing all the testimony was lost and, of course, could not be included in the case on appeal. This Court ordered a new trial. There was no record at all before the Court. In *State v. Parks,* 107 N.C. 821, 12 S.E. 572, the case on appeal, exceptions were sent to the judge for settlement. However, the judge died and the record was lost. On certiorari this Court ordered a new trial. In *State v. Powers,* 10 N.C. 376, this Court said:

> "The defendant has appealed from the judgment rendered against him, but no case is made up to enable this Court to judge whether the law has been duly administered; and we must, therefore, have inspected the record to decide on the legality of the judgment. But it appears from the certificate of the judge that a case presenting the points was intended to have been made up, but was prevented from his having lost the notes of the trial. Under these circumstances there is no other mode by which the justice of the case can be attained but by awarding a
>
> New trial."

There was no record at all before the Court.

[6] In the instant case all parts of the record proper are before us. Hence it is our duty to examine it, and to take notice *ex mero motu* of any disclosed error or defect. Error otherwise than upon the face of the record must be made to appear and must be the subject of an assignment. The absence of the defendant's testimony and the court's charge is accounted for. Absent, also, are any claims or suggestions of error prejudicial to the defendant.

The State's evidence makes out a strong case. The defendant's admissions on cross-examination and the number of shots

fired, three in the back, tend to rebut any claim of self-defense. While we do not have the record of defendant's direct testimony, the jury did hear and consider every word the defendant said on both direct and cross-examination.

In the trial, verdict and judgment, we find

No error.