STATE OF NORTH CAROLINA v. DAVID EARL DILLARD

No. 9

(Filed 13 March 1974)

1. **Homicide § 21— first degree murder — death by shooting — sufficiency of evidence**

    The evidence was sufficient to withstand defendant's motion for nonsuit in a prosecution for first degree murder where such evidence tended to show that defendant went to the church which his wife attended and remained in the vicinity for two and one half hours before the shooting, defendant smuggled a gun into the church under his coat, defendant shot his wife at close range as she was proceeding down the aisle of the church and then fired two more shots into her body as she lay on the floor, and defendant then fired several shots at his wife's relatives as they fled from the scene.

2. **Criminal Law §§ 102, 135; Homicide § 31— first degree murder — no jury argument on punishment**

    Since the punishment to be imposed was not a matter to be determined by the jury in a first degree murder case, defendant's counsel was not entitled to argue that question to the jury.

3. **Constitutional Law § 36; Criminal Law § 135; Homicide § 31— first degree murder — death penalty proper**

    The trial court in this first degree murder case did not err in overruling defendant's motion in arrest of judgment on the ground that the death sentence imposed upon defendant was not authorized by a constitutionally valid statute of the State but was cruel and unusual punishment prohibited by the U. S. Constitution.

    Chief Justice BOBBITT and Justices HIGGINS and SHARP dissenting as to death sentence.

APPEAL by defendant from *Braswell, J.,* at the 30 July 1973 Session of ROBESON.

By an indictment, proper in form, the defendant was charged with the murder of Mattie Bell Dillard, his wife, and was found guilty of murder in the first degree. Pursuant to the verdict, he was sentenced to death. His three assignments of error are: (1) The denial of his motion for judgment of nonsuit; (2) the denial of his motion that he be permitted to argue to the jury the question of punishment; and (3) the denial of his motion in arrest of judgment. The basis for the motion in arrest of judgment, as set forth in his brief on appeal, is that "the death sentence imposed upon appellant is legally unauthorized and constitutes a cruel and unusual punishment prohibited

by the Eighth and Fourteenth Amendments to the Constitution of the United States."

The defendant offered no evidence. The evidence for the State was to the following effect:

On 22 April 1973 (Easter Sunday) at about 7:30 a.m., a witness for the State, whose home adjoined the property of the church attended by the deceased and occasionally by the defendant, saw the defendant walking around in the church yard carrying a shotgun. At 9:30 a.m. the defendant came to the back door of the home of this witness and talked briefly to her husband. Following that conversation, he walked back toward the front door of the church. He entered the church and was told by the janitor that the church "opened" at 10:00 a.m. but the janitor did not object to his staying in the church and waiting until that time. The defendant, however, left the building to get a drink of water.

At about 10:00 a.m. the defendant was observed by several witnesses sitting in the back of the church; i.e., near the front door. Sunday School exercises had begun and were being conducted in the front portion of the church; i.e., near the pulpit. The deceased, 19 years of age, her one-year-old baby, her brother, his wife and their two little girls then entered the church and proceeded down the aisle toward the front, where the Sunday School exercises were in progress. The defendant thereupon shot his wife with the shotgun. She fell to the floor of the church aisle and, as she lay there, he reloaded the gun twice and shot her again and again.

The defendant then pointed the shotgun at his brother-in-law who fled from the church, as did most of the other occupants. As the brother-in-law was fleeing to the home next door to the church, the defendant shot him, the shot striking him in the foot. The brother-in-law and his wife then ran through the house and as they emerged from its front door, the defendant shot again and wounded the wife of his brother-in-law. He then went back toward the church and shot at an automobile in which his parents-in-law appear to have been sitting.

Immediately after their marriage, the defendant and the deceased lived with her parents. Later they separated and he moved out of the home of his parents-in-law. Thereafter, he and his wife became reconciled and then, some three or four weeks

prior to the shooting, they separated again, she returning to the home of her parents.

The deceased sustained three shotgun wounds at close range, one in the right side of her face or neck, below the jaw, one in her right arm and one in her right side. Prior to the shooting, she was in good health. Shortly thereafter, when her body was removed from the church for transportation to the hospital by ambulance, she appeared to be dead.

Approximately one hour after the shooting, Patrolman Daniels of the State Highway Patrol was proceeding to the church in response to a call. Half a mile from the church, he met the defendant walking along the road, carrying a shotgun. Patrolman Daniels stopped his automobile. The defendant came up and said that he was the man for whom the patrolman was looking and that he had just killed his wife. Patrolman Daniels took the defendant into his car and carried him to the sheriff's office. He asked the defendant no questions concerning the shooting but, on the contrary, told him to say no more until he talked with the investigating officer. Nevertheless, the defendant continued to talk and stated that "had it not been for his mother-in-law's interference, it wouldn't have happened." At the sheriff's office, Patrolman Daniels delivered the defendant and the shotgun into the custody of Deputy Sheriff Walters.

Deputy Sheriff Walters advised the defendant of his constitutional rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602, and offered him the use of a telephone. The defendant stated that he understood his rights. He told Deputy Walters that he had taken the gun into the church under his coat, had taken a seat on the back seat of the church, had thrown his coat over the gun and had shot his wife due to family problems, which he attributed to his mother-in-law.

*Attorney General Robert Morgan by Assistant Attorney General Costen and Assistant Attorney General Jones for the State.*

*McManus & McManus by J. M. McManus for the defendant.*

*David E. Kendall for NAACP Legal Defense Fund, amicus curiae.*

LAKE, Justice.

The judge's charge to the jury is not set forth in the record and no assignment of error is directed thereto. Consequently, it is presumed that the court correctly instructed the jury on every phase of the case with respect both to the law and to the evidence. *State v. Pinyatello,* 272 N.C. 312, 327, 158 S.E. 2d 596; *State v. Hines,* 266 N.C. 1, 145 S.E. 2d 363; Strong, N. C. Index 2d, Appeal and Error, § 42, and Criminal Law, § 158.

[1] The denial of the defendant's motion for judgment as of nonsuit was obviously correct. The undisputed testimony of several eyewitnesses to the shooting of the deceased clearly identified the defendant as the perpetrator of the offense and was sufficient to show that the shooting was intentional. Thus, the evidence was sufficient to give rise to a presumption of malice. *State v. Bolin,* 281 N.C. 415, 189 S.E. 2d 235; *State v. Duboise,* 279 N.C. 73, 81, 181 S.E. 2d 393. The undisputed evidence further shows that the defendant, armed with a shotgun, went to the church, remained in that vicinity some two and one half hours before the shooting, smuggled the gun into the church under his coat and, when his wife entered the church and was proceeding down the aisle, shot her at close range and then fired two more shots into her body as she lay on the floor. Following that, he fired several shots at her relatives as they fled from the scene. Thus, the evidence was ample to support the finding that the murder of his wife was with premeditation and deliberation. As we said in *State v. Duboise, supra,* at page 82, "The additional ingredient of premeditation and deliberation necessary in first degree murder may be inferred from the vicious and brutal circumstances of the homicide, *e.g.,* lack of provocation, threats before and during the occurrence, infliction of lethal blows after the victim had been felled and rendered helpless, and conduct of the defendant before and after the killing." There is in this record no evidence whatever of provocation, or that the deceased spoke to or was aware of the presence of the defendant prior to the shooting.

[2] There was no error in the court's ruling that the defendant's counsel could not make an argument to the jury upon the question of the punishment to be imposed. In *State v. Waddell,* 282 N.C. 431, 445, 194 S.E. 2d 19, we said, with reference to the trial of a defendant upon the charge of murder in the first degree, rape, arson or burglary in the first degree:

"Upon the trial of any defendant so charged, the trial judge may not instruct the jury that it may in its discretion add to its verdict of guilty a recommendation that defendant be sentenced to life imprisonment. The trial judge should charge on the constituent elements of the offense set out in the bill of indictment and instruct the jury under what circumstances a verdict of guilty or not guilty should be returned. Upon the return of a verdict of guilty of any such offense, the court must pronounce a sentence of death. The punishment to be imposed for these capital felonies is no longer a discretionary question for the jury and therefore no longer a proper subject for an instruction by the judge."

The punishment to be imposed not being a matter to be determined by the jury, defendant's counsel was not entitled to argue this question to the jury.

[3] The defendant's third, and last, assignment of error is to the overruling of his motion in arrest of judgment on the ground that the death sentence imposed upon the appellant is not authorized by a constitutionally valid statute of this State, but is cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the Constitution of the United States. Of the seventy-five page brief filed by the defendant in this Court, all but three pages are in support of this contention. This portion of the brief is a verbatim copy of the brief filed by the amicus curiae in *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721, decided 25 February 1974. Contrary to the usual practice of this Court, the same amicus curiae was permitted, at the hearing of this appeal, to make a full oral argument in support of its contentions concerning this matter. All of the contentions of this defendant and of the amicus curiae upon this question were carefully considered by us and found to be without merit in *State v. Jarrette, supra.*

No error.

Chief Justice BOBBITT, Justice HIGGINS and Justice SHARP dissent as to death sentence and vote to remand for imposition of a sentence of life imprisonment for the reasons stated in the dissenting opinion of Chief Justice Bobbitt in *State v. Jarrette,* 284 N.C. 625, 666, 202 S.E. 2d 721, 747 (1974).