STATE OF NORTH CAROLINA v. JOHN ROGER WALTERS

No. 7716SC201

(Filed 6 July 1977)

**Criminal Law § 102.12— counsel's statement of punishment to jury — refusal error**

Defendant in a second degree murder prosecution is entitled to a new trial where the trial court refused to allow defense counsel to read to the jury statutes, including punishment provisions, with respect to first and second degree murder and manslaughter. G.S. 84-14.

Judge BRITT dissenting.

APPEAL by defendant from *Canaday, Judge.* Judgment entered 16 September 1976 in Superior Court, ROBESON County. Heard in the Court of Appeals 29 June 1977.

Defendant was placed on trial for murder in the second degree.

The State offered evidence tending to show the following:

At about 1:30 a.m. on 28 February 1976, defendant called the police station and said that he had shot a man. A witness to the conversation (who had heard five or six shots) asked defendant what had happened. Defendant stated that Carson Cox had pulled a shotgun on him and defendant shot him. Defendant had the shotgun with him. When Esther Bell (defendant's girl friend) walked up, defendant referred to deceased by a vile name and said that if he "ain't dead, he ought to be." A deputy sheriff went to the scene of the shooting and saw a large pool of blood near deceased's car and a smaller puddle of blood eight feet from the car. The body had been taken to a local hospital.

The deputy testified that defendant made, in essence, the following statement: Deceased and defendant were friends. They had been riding around earlier in the evening. They had stopped and were sitting in the car. Deceased began fussing and got out of the car. Deceased came back with a shotgun and pointed it in the window. Defendant pushed the gun around and deceased walked off. Deceased returned, pointed the shotgun at defendant and told defendant that he was going to get "messed up" or words to that effect. Defendant pushed the shotgun and took his pistol and began shooting.

Deceased had been shot in the left elbow, the left forearm, the right upper quadrant of the abdomen and the left upper chest. A bullet had also entered the left lower chest and travelled down through the diaphragm into the small intestine. Death was caused by hemorrhage secondary to the gunshot wounds.

The State then rested and defendant's motion for nonsuit was denied. Defendant then offered evidence, in substance, as follows:

Defendant and deceased lived in the same neighborhood. They had been acquainted for 20 years and there had never been any trouble between them. On the evening before the shooting, deceased had adjusted one of the headlights on defendant's car. Defendant noticed that he was drinking at that time. Defendant left his home to get his girl friend, and he and the girl rode around until about 10:00 p.m. when they returned to the parking lot of a service station near the residences of the defendant and deceased. Deceased drove up and asked to be taken to a nearby pool hall. The three stayed at the pool hall until about 11:00 p.m. when they returned to the station parking lot. After talking for some time, defendant, deceased and defendant's girl friend went to a beer store and then to a bootleg liquor store. They then returned to the station and continued to talk. Deceased got out of the car and then got back in and sat down. They remained in the car talking and listening to the radio until after midnight. Both defendant and deceased had been drinking during the evening. An acquaintance of defendant walked up and, at his request, defendant took the person to another house. They then returned to the station and deceased got out of the defendant's car and got in his own. Deceased had difficulty in getting the right key in the switch, could not or did not start the car and then started walking in the direction of his home. About ten minutes later deceased returned and was carrying a shotgun. He stuck the shotgun in the car window and pointed it at the side of defendant's head. He cursed defendant and told him he would scatter his brains. The girl friend got in the floorboard, began to cry and begged deceased to go away. Deceased withdrew the gun and went to his own car and sat down. He immediately jumped back out of the car and again pointed the gun at defendant's temple. Defendant grabbed the gun with his left hand, pushed the barrel up and, with his right hand, reached in the console of his car and got his pistol, a .25 automatic, and began firing at deceased. He continued

to fire until deceased released the shotgun. Deceased staggered to the back of the car and fell. Defendant then picked up the loaded shotgun and uncocked it. He then went to the telephone and called the police.

Defendant also offered evidence tending to show that deceased had a bad reputation as being a dangerous and violent man. His evidence further tended to show that defendant had a good reputation.

The jury returned a verdict of guilty of voluntary manslaughter, and judgment imposing a prison sentence of not less than 10 nor more than 15 years was entered.

*Attorney General Edmisten, by Associate Attorney Norma S. Harrell and Assistant Attorney General James Wallace, Jr., for the State.*

*Britt and Britt, by E. M. Britt, for defendant appellant.*

VAUGHN, Judge.

We have carefully considered defendant's exceptions based on the denial of his motion for nonsuit. When all the evidence is considered in the light most favorable to the State, we conclude that it was sufficient to take the case to the jury.

At the conclusion of all the evidence, and in the absence of the jury, defendant moved that he be allowed to read to the jury the provisions of G.S. 14-17 ["Murder in the first and second degree defined; punishment"] and G.S. 14-18 ["Punishment for manslaughter"] including the punishment provisions. The court refused to allow counsel to read any of the punishment provisions of the statute to the jury. That denial is the subject of defendant's exception No. 47.

G.S. 84-14, in part, provides, "In jury trials the whole case as well of law as of fact may be argued to the jury."

In *State v. McMorris,* 290 N.C. 286, 225 S.E. 2d 553, the Supreme Court awarded a new trial in a burglary case because the trial court refused to allow counsel to advise the jury of the punishment by law provided for the crime.

In *State v. Britt,* 285 N.C. 256, 273, 204 S.E. 2d 817, the Supreme Court held:

"Counsel may, in his argument to the jury, in any case, read or state to the jury a statute or other rule of law relevant to such case, *including the statutory provision fixing the punishment for the offense charged.* G.S. 84-14; *State v. Crisp,* 244 N.C. 407, 94 S.E. 2d 402, 67 A.L.R. 2d 236; Annot. 67 A.L.R. 2d 245. He may not, however, state the law incorrectly or read to the jury a statutory provision which has been declared unconstitutional. *See, State v. Banner,* 149 N.C. 519, 526, 63 S.E. 84. Nor may counsel argue to the jury that the law ought to be otherwise, that the punishment provided thereby is too severe and, therefore, the jury should find the defendant not guilty of the offense charged but should find him guilty of a lesser offense or acquit him entirely." (Emphasis added.)

Justice Exum, speaking for a unanimous Court in *State v. McMorris, supra,* said:

"In a real sense the sanction prescribed for criminal behavior is part of the law of the case. Indeed, the dispute in jurisprudential circles is whether the sanction for its violation is the *only* thing which distinguishes law from custom. *See* H.L.A. Hart, The Concept of Law, Chapters 1 and 2 (1961).

It is, consequently, permissible for a criminal defendant in argument to inform the jury of the statutory punishment provided for the crime for which he is being tried. In serious felony cases, at least, such information serves the salutary purpose of impressing upon the jury the gravity of its duty. It is proper for defendant to advise the jury of the possible consequence of imprisonment following conviction to encourage the jury to give the matter its close attention and to decide it only after due and careful consideration."

G.S. 84-14, as interpreted by the Supreme Court, gives a defendant the right to inform the jury of the punishment that may be imposed upon conviction of the crime for which he is being tried. The defendant at bar was deprived of that right and, under the authority of *McMorris* and *Britt,* will be awarded a new trial.

It is not necessary to discuss the other errors assigned by the defendant because they may not occur at his next trial.

State v. Walters

New trial.

Judge ARNOLD concurs.

Judge BRITT dissents.

Judge BRITT dissenting:

I respectfully dissent to the majority opinion awarding defendant a new trial on the ground that the trial judge committed reversible error in not allowing defendant to read the provisions of G.S. 14-17 and 14-18 to the jury. In view of the authorities cited in the majority opinion, I think the trial court erred but I do not think the error was sufficiently prejudicial to require a new trial.

It is well settled in this jurisdiction that a defendant has the burden not only to show error but also to show that the error complained of affected the result adversely to him. *State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522 (1968) ; *State v. Jarrett,* 271 N.C. 576, 157 S.E. 2d 4 (1967) ; *State v. Bailey,* 12 N.C. App. 280, 182 S.E. 2d 881 (1971). The presumption is in favor of the regularity of the trial. *State v. Sanders,* 280 N.C. 67, 185 S.E. 2d 137 (1971) ; *State v. Partlow,* 272 N.C. 60, 157 S.E. 2d 688 (1967). To warrant a new trial it should be shown that the ruling complained of was material and prejudicial to defendant's rights and that a different result likely would have ensued. *State v. Paige, supra.* Mere technical error does not entitle a defendant to a new trial. *State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971).

With respect to Exception No. 47 upon which the majority awards a new trial, the record discloses:

"THE COURT: Let the record show that the defendant moves the court that he be permitted in argument to read to the jury the provisions of General Statutes 14-17 and 14-18, including the punishment provisions. The court denies defendant's motion with respect to any reading of the punishment provisions. The court allows the defendant's motion with respect to the reading of the statute—or the provisions of the statute which do not pertain to punishment for the offense.

EXCEPTION No. 47"

G.S. 14-17 defines murder in the first and second degrees and prescribes the punishment for each. In the case at hand defendant was not placed on trial for murder in the first degree and by finding him guilty of voluntary manslaughter, the jury, in effect, found him not guilty of murder in the second degree. That being true, it is clear that defendant was not prejudiced by the failure of the trial judge to permit him to read the punishment provisions of G.S. 14-17 to the jury. *State v. Casper*, 256 N.C. 99, 122 S.E. 2d 805 (1961).

G.S. 14-18 provides: "Punishment for manslaughter.—If any person shall commit the crime of manslaughter he shall be punished by imprisonment in the county jail or State prison for not less than four months nor more than twenty years: Provided, however, that in cases of involuntary manslaughter, the punishment shall be in the discretion of the court, and the defendant may be fined or imprisoned, or both."

It will be noted that G.S. 14-18 does not define manslaughter, either voluntary or involuntary. A reading of the statute to the jury would have advised them only that the punishment for voluntary manslaughter is imprisonment for not less than four months nor more than twenty years, and that the punishment for involuntary manslaughter is a fine or imprisonment, or both, in the discretion of the court.

It will be noted further that Exception 47 does not relate to defendant's argument of punishment to the jury, only the *reading* of the statute. In fact, our Supreme Court has held that even in a capital case defendant's counsel is not entitled to argue the question of punishment to the jury. *State v. Dillard*, 285 N.C. 72, 203 S.E. 2d 6 (1974).

In *State v. Rhodes*, 275 N.C. 584, 169 S.E. 2d 846 (1969), in an opinion by Justice (now Chief Justice) Sharp, our Supreme Court held that the amount of punishment which a verdict of guilty will empower the judge to impose is totally irrelevant to the issue of a defendant's guilt and is therefore no concern of the jurors. In *Rhodes*, the Supreme Court went further and held that the statement in *State v. Garner*, 129 N.C. 536, 40 S.E. 6 (1901), that a jury in a non-capital case is entitled to be informed as to the punishment prescribed for the offense or offenses with which a defendant is charged, is expressly disapproved.

The majority opinion relies very heavily on *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974), and *State v. McMorris,* 290 N.C. 286, 225 S.E. 2d 553 (1976). It will be noted that in *Britt* the defendant had been convicted of murder in the first degree and sentenced to death, and that there was some uncertainty about the intent of the jury in the form of its verdict. It would appear that the holding in that case must be considered in the context of the proceedings complained of and the fact that at that time the mandatory sentence for first-degree murder, absent a recommendation of mercy, was death.

In *McMorris* the defendant was found guilty of first-degree burglary and given the mandatory sentence of life imprisonment; he was also found guilty of second-degree rape and given a concurrent sentence of 16-20 years. The Supreme Court held that the trial court erred in not allowing defense counsel to inform the jury that the conviction of burglary in the first degree would necessarily result in the imposition of a life sentence. "In serious felony cases, at least, such information serves the salutary purpose of impressing upon the jury the gravity of its duty." 290 N.C. at 288, 225 S.E. 2d at 554.

I can perceive the benefit that would accrue to a defendant for the jury to be informed that its verdict of guilty would result in a *mandatory* sentence of death or life imprisonment. Surely, this information would impress upon the jury "the gravity of its duty." But I cannot perceive how the defendant in this case was prejudiced when the jury was not informed that upon a conviction of voluntary manslaughter the defendant's punishment could be imprisonment for not less than four months nor more than twenty years, and if he was convicted of involuntary manslaughter the punishment would be a fine or imprisonment, or both, in the discretion of the court.

It might be argued that had the jury known that defendant could be given a sentence of twenty years if convicted of voluntary manslaughter, they might have been reluctant to convict him of that offense. By the same token, it could be argued that had they known he could be given a sentence of only four months if convicted of that offense, they might have had no hesitancy in convicting him.

In *Rhodes* the court held that while the trial judge erred in informing the jury as to the penalty for an offense in ques-

tion, the error was not prejudicial. I feel that the converse is true in this case.

In the case *sub judice* there were no witnesses to the killing except the defendant and his girl friend. Of necessity the State had to rely on statements made by defendant. While the deceased was described as an unsavory character, defendant testified that he had known deceased for twenty years, that they were good friends and that deceased had been with him and his girl friend for several hours on that night; that he had carried deceased to several places that night to purchase beer and liquor.

It would appear that the jury's verdict "turned" on the question of excessive force. Defendant testified that when deceased stuck the shotgun barrel in the car the second time he (defendant) with his left hand pushed the barrel back out of the car and up and over the top of the car; that with his right hand he (defendant) then obtained his pistol from the console of his car, pointed it at deceased and fired five shots, all of which entered deceased's arms or body. The pistol was a semi-automatic, requiring defendant to pull the trigger each time it was fired.

The record indicates that the trial of this case consumed a large part of a two-week session of the court; that the case was hotly contested with the State being represented by an outstanding district attorney and the defendant by two very competent attorneys; and that the able trial judge exercised unusual patience and judicial restraint in presiding over the trial. Upon a careful review of the record, I am convinced that the long and tedious trial was substantially free from error except for the error discussed and I cannot believe that it was prejudicial to defendant.

Like any other defendant, Walters was "entitled to a fair trial, not a perfect one." *State v. Squire,* 292 N.C. 494, 508, 234 S.E. 2d 563 (1977); *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953). I feel that he had a fair trial.