STATE OF NORTH CAROLINA v. MICHAEL DAMMONS

No. COA02-625

(Filed 5 August 2003)

### 1. Bail and Pretrial Release— failure to appear—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of failure to appear, because: (1) the secured order signed by defendant in the presence of the magistrate and

read to him by a bail bondsman ordered defendant to appear in court for the charges against him; (2) an unsecured release order signed by defendant also ordered defendant to appear in court for the charges against him, and the fact that the magistrate's signature on that order was generated by a computer rather than handwritten was of no consequence; (3) defendant had actual knowledge of his duty to appear in court and he cannot claim ignorance of the law as an excuse; (4) there was evidence from which a jury could find that defendant violated either N.C.G.S. § 5A-12(a) or § 15A-543, and it was within the prosecutor's discretion to decide under which statute the State wished to proceed against defendant; and (5) assuming arguendo that defendant was the only person in the pertinent county to have been prosecuted for failure to appear, defendant failed to demonstrate that the district attorney exercised anything more than ordinary discretion in his prosecution of defendant.

**2. Identity Fraud— financial identity fraud—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of financial identity fraud under N.C.G.S. § 14-113.20(a), because: (1) the indictment alleged that defendant misrepresented his identity for the purpose of avoiding legal consequences, and the State presented substantial evidence at trial tending to show that defendant assumed another person's identity without consent in order to avoid the trial of felony charges against him; and (2) the language of the indictment alleging that defendant also misrepresented his identity for the purposes of making a financial transaction was unnecessary and may properly be regarded as surplusage.

**3. Identity Fraud— financial identity fraud—obstructing or delaying a law enforcement officer**

The trial court did not err in a financial identity fraud case by failing to instruct the jury on obstructing and delaying an officer even though defendant contends it is a lesser-included offense of financial identity fraud, because obstructing or delaying a law enforcement officer is not a lesser-included offense of financial identity fraud since all of the elements of the offense of obstructing or delaying a law enforcement officer are not included in the offense of financial identity fraud.

STATE v. DAMMONS

[159 N.C. App. 284 (2003)]

**4. Identity Fraud— financial identity fraud—instruction— consent**

The trial court did not err in a financial identity fraud case by allegedly failing to instruct the jury concerning consent, because the trial court properly instructed the jury that it was the State's burden to show that defendant's use of another person's identification documents at the time the offense was committed was without consent.

**5. Sentencing— habitual felon—request to inform jury about potential punishment**

The trial court did not err in a financial identity fraud and a failure to appear case by denying defendant's request to inform the jury about potential punishment based on defendant's status as an habitual felon if found guilty of the principal offenses, because although defendant has the right to inform the jury of the punishment that may be imposed upon conviction of the crime for which he is being tried, this principle does not support a defendant's right to inform the jury during a principal felony trial of the possible maximum sentence which might be imposed upon an habitual felon adjudication.

**6. Sentencing— habitual felon—indictment—motion to dismiss**

The trial court did not err in a financial identity fraud and a failure to appear case by denying defendant's motion to dismiss the habitual felon indictment on the ground that other similarly situated defendants are not so prosecuted, because: (1) defendant acknowledged that this issue has previously been decided against him; and (2) defendant advances no compelling grounds to circumvent this binding precedent.

**7. Sentencing— habitual felon—Class C felon**

The trial court did not err in a financial identity fraud and a failure to appear case by sentencing defendant as a Class C felon based on his status as an habitual felon, because: (1) where an habitual felon has been convicted of a felony offense, the felon must be sentenced as a Class C felon; (2) the legislature has specifically authorized the enhancement of sentences for recidivists; (3) the omission by the trial court in its original judgments to check Block Five, despite its sentencing of defendant as an habitual felon, was a technical error and the amendment of such judgments outside the presence of defendant does not invalidate the amended judgments; and (4) sentence enhancement based on

habitual felon status does not constitute cruel and unusual punishment under the Eighth Amendment.

**8. Sentencing— presumptive range—failure to make findings for aggravating or mitigating factors**

The trial court did not err in a financial identity fraud and a failure to appear case by failing to make findings with regard to aggravating or mitigating factors, because the trial court was not required to make such findings when it sentenced defendant within the presumptive range.

Appeal by defendant from judgments entered 10 January 2002 by Judge James Floyd Ammons, Jr. in Lee County Superior Court. Heard in the Court of Appeals 12 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General William P. Hart, for the State.*

*Bruce T. Cunningham, Jr., for defendant appellant.*

TIMMONS-GOODSON, Judge.

Michael Dammons ("defendant") appeals from the judgments of the trial court entered upon jury verdicts finding defendant guilty of financial identity fraud, failure to appear, and of being an habitual felon. For the reasons stated herein, we find no error by the trial court.

The State's evidence at trial tended to show the following: On 22 June 2000, Douglas Ray Brownie ("Brownie"), a bail bondsman, posted a $20,000.00 secured bond for defendant in connection with criminal charges against defendant. Upon posting the bond, Brownie and defendant signed a pretrial release order in the presence of a magistrate. The pretrial release order informed defendant that he was "ordered to appear before the court on all subsequent continued dates" and that if defendant failed to appear, he could be "imprisoned for as many as three years and fined as much as $3,000." Brownie read the document to defendant, who promised to be in court. Defendant also appeared in court on 5 July 2000 on charges of felonious assault, at which time he was released pursuant to an unsecured bond. The unsecured bond, signed by defendant and Lee County magistrate Sandra Jordan ("Magistrate Jordan"), recited that defendant was "ORDERED to appear before the Court as provided above and at all subsequent continued dates." The unsecured bond, like the secured bond, notified defendant that "if you fail to appear,

you will be arrested and may be imprisoned for as many as three years and fined as much as $3,000.00."

The charges against defendant were set for trial on 22 January 2001. Defendant, however, failed to appear in court for trial of his case. Prior to his court date, defendant informed his girlfriend, Joyce McNeill ("McNeill") that he might not go to court. McNeill testified that defendant removed his possessions from her residence on or about 22 January 2001, and that she had no contact with him until two months later, when defendant telephoned her to "let [her] know that he was okay."

On 14 June 2001, Sanford police officer Marshall McNeill ("Officer McNeill") responded to a report of a suspicious vehicle. In responding to the report, Officer McNeill encountered defendant, who produced a false identification card and social security card, both of which identified defendant as "William Artis Smith" ("Smith"). Although a second responding officer raised doubts as to whether defendant was in fact Smith, Officer McNeill allowed defendant to leave because he "didn't have any other information at that time other than [defendant] was who he said he was." Before leaving, Officer McNeill issued to defendant a citation in Smith's name. After further investigation, Officer McNeill discovered defendant's true identity and issued an alert that same day. Later that afternoon, Officer McNeill discovered defendant in an abandoned mobile home, where he had hidden in an effort to elude pursuing police officers. Officer McNeill arrested defendant, who continued to assert that he was Smith. Upon searching defendant pursuant to his arrest, police officers found a credit card, birth certificate, and a ticket from a pawn shop, all of which bore the name William Artis Smith. Although several police officers and a magistrate who knew defendant positively identified him as Michael Dammons, defendant continued to assert that he was Smith.

William Artis Smith testified on behalf of the State. Smith stated that he had been acquainted with defendant for ten years, and that he had lost his wallet during the spring of the previous year. The wallet contained Smith's birth certificate and other identification. Smith denied giving defendant permission to use his identity or his identification documents. Smith further denied receiving a citation from Officer McNeill or acquiring a pawn ticket.

Defendant testified and admitted that he possessed an identification card with his photograph and Smith's name. Defendant stated

that Smith gave him the birth certificate, social security card and school records in order for defendant to obtain identification for employment purposes. Defendant admitted that he knew he was due in court on 22 January 2001 to stand trial for charges of driving while impaired, assault with a deadly weapon inflicting serious injury, driving while license revoked, and careless and reckless driving, but instead traveled to Texas. Defendant stated that he returned to North Carolina in May with the intent of "turning himself in," but confirmed that when arrested, he continued to deny his true identity.

Upon consideration of the evidence, the jury found defendant guilty of financial identity fraud and failure to appear on a felony. The jury further found defendant guilty of being an habitual felon. The trial court thereafter sentenced defendant to two consecutive terms of ninety-five to 123 months' imprisonment. From his convictions and resulting sentence, defendant appeals.

---

Defendant brings forth eight assignments of error on appeal, arguing that the trial court erred by (1) denying defendant's motion to dismiss the charge of failure to appear; (2) denying defendant's motion to dismiss the charge of financial identity fraud; (3) failing to instruct the jury on a lesser included offense; (4) failing to instruct the jury concerning consent; (5) denying defendant's request to inform the jury about potential punishment; (6) denying defendant's motion to dismiss the habitual felon indictment; (7) sentencing defendant as an habitual felon; and (8) failing to make findings with regard to aggravating or mitigating factors. For the reasons stated herein, we conclude that the trial court committed no error with regard to defendant's asserted assignments of error on appeal.

*Motion to Dismiss Charge of Failure to Appear*

[1] By his first assignment of error, defendant contends that the trial court erred in failing to dismiss the charge of failure to appear. Defendant sets forth several arguments in support of this assignment of error. First, defendant asserts that there was no evidence that a judge or magistrate ordered him to appear in court on 22 January 2001, and that he therefore cannot be prosecuted for failure to appear. We disagree. The secured release order, signed by defendant in the presence of the magistrate and read to him by Brownie, clearly and plainly ordered defendant to appear in court for the charges against him. Further, Magistrate Jordan, whose name appears on the unsecured release order, testified that she processed defendant on

his felonious assault charge. The unsecured release order signed by defendant also ordered defendant to appear in court for the charges against him. We reject defendant's argument that, because Magistrate Jordan's signature on the unsecured release order was generated by a computer, rather than handwritten, there is no evidence that he was "ordered" to appear on the charges against him.

Defendant further argues that dismissal of the charge was proper because he had no actual knowledge that failure to appear was a criminal act. This argument has no merit. The pretrial order signed by defendant specifically informed defendant that if he failed to appear in court he could be fined and imprisoned. Brownie also informed defendant that he could be imprisoned for failure to appear. The evidence tended to show that defendant knew that he was required to be in court on 22 January 2001, but deliberately fled the jurisdiction of the court. Because defendant had actual knowledge of his duty to appear in court, he cannot claim ignorance of the law as an excuse. *See Lambert v. California*, 355 U.S. 225, 229-30, 2 L. Ed. 2d 228, 232 (1957) (concluding that a California criminal statute requiring persons convicted of a felony to register violated due process where applied to a person with no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge).

In a related argument, defendant asserts that failure to appear is not a substantive crime. We do not agree. Section 15A-543 of the North Carolina General Statutes provides that "any person released pursuant to this Article who willfully fails to appear before any court or judicial official as required is subject to the criminal penalties set out in this section." N.C. Gen. Stat. § 15A-543(a) (2001). Where "[t]he violator was released in connection with a felony charge against him," violation of section 15A-543 is a felony offense. *See id.*; *see also State v. Messer*, 145 N.C. App. 43, 47, 550 S.E.2d 802, 805 (setting forth the elements of the offense of failure to appear), *affirmed per curiam*, 354 N.C. 567, 556 S.E.2d 293 (2001).

Further, defendant contends that his prosecution for failure to appear violated his due process rights, in that he could have been punished for his failure to appear under section 5A-12(a) of the North Carolina General Statutes. Section 5A-12(a) provides that, where a person willfully violates a court order, he may be punished for criminal contempt of court and sentenced to thirty days of imprisonment. *See* N.C. Gen. Stat. § 5A-12(a) (2001); *see also* N.C. Gen. Stat. § 5A-11 (2001) (defining criminal contempt). However, "[a] single act or transaction may violate different statutes." *State v. Freeman*, 59 N.C.

App. 84, 87, 295 S.E.2d 619, 621 (1982), *reversed on other grounds*, 308 N.C. 502, 302 S.E.2d 779 (1983). Here, there was evidence from which a jury could find that defendant violated either section 5A-12(a) or section 15A-543. As such, it was within the prosecutor's discretion to decide under which statute the State wished to proceed against defendant. *See State v. Cates*, 154 N.C. App. 737, 740, 573 S.E.2d 208, 210 (2002) (concluding that it was within the prosecutor's discretion to select among the defendant's prior convictions for purposes of proving his habitual felon status and calculating his prior record level), *disc. review denied*, 356 N.C. 682, 577 S.E.2d 897 (2003).

Finally, defendant argues that the charge against him should have been dismissed, in that he was selectively prosecuted in violation of his right to equal protection under the law. To support a claim of selective prosecution, "[a] defendant must show more than simply that discretion has been exercised in the application of a law resulting in unequal treatment among individuals. He must show that in the exercise of that discretion there has been intentional or deliberate discrimination by design." *State v. Spicer*, 299 N.C. 309, 312, 261 S.E.2d 893, 896 (1980); *State v. Wilson*, 311 N.C. 117, 123, 316 S.E.2d 46, 51 (1984). To demonstrate such intentional discrimination, the defendant must allege " 'that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Wilson*, 311 N.C. at 123-24, 316 S.E.2d at 51 (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 7 L. Ed. 2d 446, 453 (1962)). It must also be noted that

> [d]istrict attorneys have wide discretion in performing the duties of their office. This encompasses the discretion to decide who will or will not be prosecuted. In making such decisions, district attorneys must weigh many factors such as "the likelihood of successful prosecution, the social value of obtaining a conviction as against the time and expense to the State, and his own sense of justice in the particular case." Comment, *The Right to Nondiscriminatory Enforcement of State Penal Laws*, 61 Columbia L. Rev. 1103, 1119 (1961). The proper exercise of his broad discretion in his consideration of factors which relate to the administration of criminal justice aids tremendously in achieving the goal of fair and effective administration of the criminal justice system.

*Spicer*, 299 N.C. at 311-12, 261 S.E.2d at 895.

In the instant case, defendant alleges that he was selectively prosecuted based on the following evidence: (1) the clerk of court for Lee County testified that she knew of no person other than defendant to be prosecuted for failure to appear; (2) an editorial was published in the local newspaper criticizing the Lee County District Attorney's Office's handling of defendant's case; (3) the assistant district attorney who prosecuted defendant's case responded to the editorial by sending to the newspaper's editor a letter defending his office and its prosecution of defendant. Defendant asserts that this evidence is sufficient to demonstrate that he was singled out for prosecution. We disagree.

Assuming *arguendo* that defendant is the only person in Lee County to have been prosecuted for failure to appear, a fact not established by this record, defendant has nevertheless failed to demonstrate that the district attorney exercised anything more than ordinary discretion in his prosecution of defendant. Defendant presented no evidence that he was subjected to any intentional or deliberate discrimination based upon any unjustifiable standard such as race, religion, or other arbitrary classification. *See Spicer*, 299 N.C. at 312, 261 S.E.2d at 896; *Wilson*, 311 N.C. at 123, 316 S.E.2d at 51. On the contrary, the State advanced several compelling grounds for defendant's prosecution. At trial, the assistant district attorney stated that his office decided to prosecute defendant for failure to appear because defendant: (1) fled the jurisdiction for a "fairly substantial" period of time; (2) "made a concerted effort to conceal himself from authorities[;]" (3) was charged with committing a serious underlying offense; and (4) was an habitual felon. Because defendant failed to meet his burden of showing that he was selectively prosecuted based upon an unjustifiable standard, the trial court did not err in denying his motion to dismiss the charge of failure to appear. *See State v. Wilson*, 139 N.C. App. 544, 551, 533 S.E.2d 865, 870, *appeal dismissed and disc. review denied*, 353 N.C. 279, 546 S.E.2d 395 (2000). We overrule defendant's first assignment of error.

*Motion to Dismiss Charge of Financial Identity Fraud*

[2] By his second assignment of error, defendant argues that the trial court erred in denying his motion to dismiss the charge of financial identity fraud. Defendant contends that there exists a fatal variance between the indictment and the evidence presented at trial such that the charge should have been dismissed. The indictment alleged that defendant had fraudulently represented himself as William Artis Smith "for the purpose of making financial or credit transactions and

for the purpose of avoiding legal consequences in the name of Michael Anthony Dammons." Defendant asserts there was no evidence presented at trial tending to show that he made any financial or credit transactions using the name William Artis Smith, and his conviction of financial identity fraud therefore cannot stand. We do not agree.

Under the North Carolina General Statutes, a person is guilty of financial identity fraud if he

> knowingly obtains, possesses, or uses identifying information of another person without the consent of that other person, with the intent to fraudulently represent that the person is the other person for the purposes of making financial or credit transactions in the other person's name *or* for the purpose of avoiding legal consequences . . . .

N.C. Gen. Stat. § 14-113.20(a) (2001) (emphasis added). The indictment alleged that defendant misrepresented his identity for the purpose of avoiding legal consequences, and the State presented substantial evidence at trial tending to show that defendant assumed Smith's identity without consent in order to avoid legal consequences; namely, the trial of felony charges against him. Because the indictment alleged proper grounds for defendant's charge of financial identity fraud, and because the State presented substantial evidence in support of these grounds, there was no fatal variance between the indictment and the evidence at trial. The language of the indictment alleging that defendant also misrepresented his identity for the purposes of making a financial transaction was unnecessary and may properly be regarded as surplusage. *See State v. Birdsong*, 325 N.C. 418, 422, 384 S.E.2d 5, 7 (1989). We therefore overrule defendant's second assignment of error.

### Jury Instructions Regarding Lesser Included Offense

**[3]** By his third assignment of error, defendant argues the trial court erred in failing to instruct the jury on obstructing and delaying an officer. Defendant contends that this was a lesser included offense of the crime of financial identity fraud, and that there was evidence from which the jury could find that defendant merely obstructed and delayed Officer McNeill and the other police officers through use of the false identification documents. This argument has no merit.

"It is only when *all* essentials of the lesser offense are included among the essentials of the greater offense that the law merges them

into one and treats the less serious charge as a 'lesser included offense.' " *State v. Stepney*, 280 N.C. 306, 318, 185 S.E.2d 844, 852 (1972). As stated *supra*, in order to convict a defendant of financial identity fraud, the State must present substantial evidence tending to show:

1) that the defendant obtained, possessed, or used the personal identifying information of another person;

2) that the defendant acted knowingly and with the intent to fraudulently represent that he was the other person for the purpose of making a financial or credit transaction or for the purpose of avoiding legal consequences; and

3) that the defendant did not have the consent of the other person.

*See* N.C. Gen. Stat. § 14-113.20; N.C.P.I.—Crim. 219B.80 (2000). In contrast, the elements of obstruction or delay of an officer are as follows:

1) that the victim was a public officer;

2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;

3) that the victim was discharging or attempting to discharge a duty of his office;

4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and

5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*See* N.C. Gen. Stat. § 14-223 (2001); 2 N.C.P.I.—Crim. 230.30 (1999). Because all of the elements of the offense of obstructing or delaying a law enforcement officer are not included in the offense of financial identity fraud, it is not a lesser included offense, and the trial court did not err in denying defendant's request to instruct the jury on obstruction or delay. We overrule this assignment of error.

### Jury Instructions Regarding Consent

[4] Defendant also argues the trial court erred in denying defendant's request to instruct the jury concerning consent by Smith to use of his identification documents. During jury deliberations, the jury made the following inquiry of the court:

[I]s the issue of consent by Mr. Smith for [defendant] to obtain and use an ID with Mr. Smith's name on it an issue only at the time the ID was obtained, July of 2000, or is it an issue both then and when it was used in June of 2001? Should consent in July of 2000 for a particular use imply much later consent for use for a different purpose?

Counsel for defendant requested that the trial court instruct the jury that "if Mr. Smith consented in July of 2000 that his consent would implicitly remain in effect . . . . [and that] the burden of the State would be to show that his consent was withdrawn." The trial court declined defense counsel's request for such an instruction, but repeated its admonition to the jury that, in order to find defendant guilty, the State had to prove beyond a reasonable doubt that defendant did not have consent "at the time the offense was committed." The date of the alleged offense was 14 June 2001. The trial court properly instructed the jury that it was the State's burden to show that defendant's use of the identification documents on 14 June 2001 was without consent, and defendant's argument to the contrary is without merit. We overrule this assignment of error.

### Potential Punishment

[5] In the fifth assignment of error, defendant asserts the trial court erred in denying his request to inform the jury during the first phase of the trial that, if convicted, he was subject to punishment as a Class C felon due to his status as an habitual felon. This argument was squarely rejected by this Court in *Wilson*, however:

Although defendant accurately maintains a criminal defendant has the right to "inform the jury of the punishment that may be imposed upon conviction of the crime for which he is being tried," *State v. Walters*, 33 N.C. App. 521, 524, 235 S.E.2d 906, 908-09 (1977) (citing N.C.G.S. § 7A-97 (1999)), *aff'd*, 294 N.C. 311, 240 S.E.2d 628 (1978), this principle does not support defendant's extrapolation therefrom of the right to inform the jury, during a principal felony trial, of the possible maximum sentence which might be imposed upon an habitual felon adjudication. *Walters* pointedly permits apprising the jury only of "the punishment that may be imposed upon conviction of the *crime for which he is being tried.*" *Id.*

Further, the statutory provisions that an habitual felon trial be held subsequent and separate from the principal felony trial, and

STATE v. DAMMONS

[159 N.C. App. 284 (2003)]

that an habitual felon indictment be revealed to the jury *only* upon conviction of the principal felony offenses, *see* G.S. § 14-7.5, logically preclude argument of issues pertaining to the habitual felon proceeding, specifically and particularly including punishment, during the principal felony trial. *See State v. Todd*, 313 N.C. 110, 120, 326 S.E.2d 249, 255 (1985) ("a defendant's 'trial' on the issue of whether defendant should be sentenced as an habitual offender [is] analogous to the separate sentencing hearing . . . to determine punishment").

*Wilson*, 139 N.C. App. at 548, 533 S.E.2d at 868. Defendant argues that *Wilson* is not controlling, in that the defendant in *Wilson*, unlike present defendant, had not previously been found to be an habitual felon. Defendant appears to argue that, because his status as an habitual felon was established during a prior trial, under *State v. Safrit*, 145 N.C. App. 541, 551 S.E.2d 516 (2001), defendant was precluded from re-litigating this issue during the trial of the instant case. In *Safrit*, this Court held that the State was collaterally estopped from attempting to convict the defendant of being a violent habitual felon based on the same two alleged prior violent felony convictions upon which a jury had already found the defendant not guilty of violent habitual felon status. *Id.* at 554, 551 S.E.2d at 525. The *Safrit* Court did not address, however, whether a defendant would similarly be precluded from re-litigating habitual felon status, and in fact, defendant *did* litigate his habitual felon status in the instant case. *Safrit* therefore does not apply here and the Court's holding in *Wilson* controls. *See Wilson*, 139 N.C. App. at 549, 533 S.E.2d at 869 ("considering the statutory provisions, authorities and public policy noted above, we hold the trial court did not err in denying defendant's request to argue to the jury the punishment he might receive as an habitual felon if found guilty of the principal offenses."). We overrule this assignment of error.

### Motion to Dismiss Charge of Habitual Felon Status

[6] By his sixth assignment of error, defendant argues that the trial court erred in denying his motion to dismiss the habitual felon indictment on the grounds that other similarly situated defendants are not so prosecuted. Defendant acknowledges that this issue has previously been decided against him, *see, e.g., State v. Parks*, 146 N.C. App. 568, 553 S.E.2d 695 (2001), *appeal dismissed and disc. review denied*, 355 N.C. 220, 560 S.E.2d 355, *cert. denied*, 537 U.S. 832, 154 L. Ed. 2d 49 (2002), and he advances no compelling

grounds to circumvent this binding precedent. This assignment of error is overruled.

### Sentencing

[7] Defendant's next assignment of error addresses the sentencing of defendant as a Class C felon by the trial court. Defendant asserts that, because financial identity fraud is punishable as a Class H felony, he could not be sentenced at a greater level, regardless of his habitual felon status. We do not agree. Defendant was convicted of failure to appear and financial identity fraud, both of which are felony offenses. The jury further determined that defendant was guilty of habitual felon status. Where an habitual felon is convicted of a felony offense "the felon must . . . be sentenced as a Class C felon." N.C. Gen. Stat. § 14-7.6 (2001); *State v. Penland*, 89 N.C. App. 350, 351, 365 S.E.2d 721, 722 (1988). The trial court therefore properly sentenced defendant as a Class C felon.

Defendant also objects to his sentence as a violation of due process. Defendant argues that, because he was informed that his failure to appear in court could result in a fine and imprisonment for three years, the trial court was not permitted to sentence him to any term of imprisonment greater than thirty-six months on the failure to appear charge. As demonstrated *supra*, however, the legislature has specifically authorized the enhancement of sentences for recidivists. *See* N.C. Gen. Stat. § 14-7.6; *State v. Todd*, 313 N.C. 110, 117-18, 326 S.E.2d 249, 253 (1985). Because he was convicted as an habitual offender, the trial court properly enhanced defendant's sentence for his conviction of failure to appear.

### Amendment of Judgments

Defendant next asserts that the judgments adjudicating defendant to be an habitual felon are void, in that they were amended to accurately reflect defendant's conviction of habitual felon status. At defendant's trial, the trial judge determined in open court that defendant was an habitual felon and that punishment as a Class C felon was appropriate. The judge then sentenced defendant to a minimum term of imprisonment of ninety-five months, with a maximum of 123 months. The original judgments filed by the trial court accurately reflected both of these facts; however, Block Five, which states that the court "adjudges the defendant to be an habitual felon to be sentenced as a Class C felon pursuant to Article 2A of G.S. Chapter 14" was not checked. The amended judgments are identical to the original ones, except that Block Five on each amended judgment has been

checked to accurately reflect the trial court's adjudication of defendant as an habitual felon. Defendant now asserts that the amendment could not occur outside of his presence, and that the resulting amended judgments are void as a result. We do not agree.

A trial court is required to amend its records to correct technical errors, and may do so either in or out of term. *See State v. Dixon*, 139 N.C. App. 332, 338, 533 S.E.2d 297, 302 (2000); *State v. McKinnon*, 35 N.C. App. 741, 743, 242 S.E.2d 545, 547 (1978). "When a court amends its records to accurately reflect the proceedings, the amended record 'stands as if it had never been defective, or as if the entry had been made at the proper time[,]'" and the amended order becomes a *nunc pro tunc* entry. *Dixon*, 139 N.C. App. at 338, 533 S.E.2d at 302 (quoting *State v. Warren*, 95 N.C. 674, 676 (1886)). In the instant case, the omission by the trial court in its original judgments to check Block Five, despite its sentencing of defendant as an habitual felon, was clearly a technical error, and the amendment of such judgments outside the presence of defendant does not invalidate the amended judgments.

### Cruel and Unusual Punishment

Defendant further argues that his sentence is excessive as a matter of law, in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. "Only in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment." *State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983); *State v. LaPlanche*, 349 N.C. 279, 284, 507 S.E.2d 34, 37 (1998). Sentence enhancement based on habitual felon status does not constitute cruel and unusual punishment under the Eighth Amendment. *See Todd*, 313 N.C. at 118-19, 326 S.E.2d at 253-55; *State v. Smith*, 112 N.C. App. 512, 514-15, 436 S.E.2d 160, 161 (1993). In *State v. Clifton*, 158 N.C. App. 88, 580 S.E.2d 40 (2003), the defendant received a sentence of two consecutive terms of a minimum of 168 months and a maximum of 211 months' active imprisonment based on his convictions of two counts of obtaining property by false pretenses and of having attained the status of habitual felon. On appeal, the defendant argued that the trial court erred in sentencing him as an habitual felon because the sentence violated the prohibition against cruel and unusual punishment. After consideration of the defendant's argument in light of the recent United States Supreme Court's decisions in *Lockyer v. Andrade*, 538 U.S. 63, 155 L. Ed. 2d 144 (2003) and *Ewing v. California*, 538 U.S. 11, 155 L. Ed. 2d 108 (2003), the Court con-

cluded that the defendant's sentence was not grossly disproportionate to the underlying offenses and did not constitute cruel and unusual punishment. *Clifton*, 158 N.C. App. at 96, 580 S.E.2d at 46.

In the instant case, defendant received two consecutive sentences of 95 to 123 months' imprisonment based on his convictions of failure to appear, financial identity fraud, and habitual felon status. The conviction of habitual felon status was based on evidence that defendant had been twice convicted of the crime of felony larceny, and once convicted of felonious escape from state prison. Like the Court in *Clifton*, we conclude that the facts of the instant case "do not meet the standard of an 'exceedingly rare' and 'extreme' case, in which the 'grossly disproportionate' principle would be violated." *Id.* at 94, 580 S.E.2d at 45; *see also State v. Hensley*, 156 N.C. App. 634, 639, 577 S.E.2d 417, 421 (rejecting the defendant's claim of cruel and unusual punishment and stating that "[d]efendant was not sentenced for 90 to 117 months in prison because he pawned a caliper obtained by false pretenses for approximately twenty dollars. Defendant was sentenced to that term because he committed multiple felonies over a span of almost twenty years and is [an] habitual felon."), *disc. review denied*, 357 N.C. 167, 581 S.E.2d 64 (2003). We therefore overrule this assignment of error.

### Aggravating and Mitigating Factors

[8] By his eighth and final assignment of error, defendant contends the trial court erred in failing to make aggravating or mitigating findings during its sentencing of defendant. The trial court sentenced defendant within the presumptive range, however, and was therefore not required to make findings in aggravation or mitigation. *See State v. Streeter*, 146 N.C. App. 594, 598, 553 S.E.2d 240, 242-43 (2001), *cert. denied*, 356 N.C. 312, 571 S.E.2d 211 (2002), *cert. denied*, 537 U.S. 1217, 154 L. Ed. 2d 1071 (2003). We overrule defendant's final assignment of error.

In the judgments of the trial court we find

No error.

Judges WYNN and LEVINSON concur.