STROUD, Judge.
*378 Juvenile appeals adjudication and disposition orders for disorderly conduct and resisting a public officer. Because there was insufficient evidence to support the adjudication for either offense, we vacate the juvenile court's adjudication and disposition orders.
*379 I. Background
On 8 November 2016, a JUVENILE PETITION (DELINQUENT) was filed alleging juvenile had engaged in disorderly conduct and resisting a public officer. The State called two witnesses to testify. The primary witness was the school resource officer, Mickey Ray. Officer Ray testified he saw the juvenile throw a chair in the cafeteria. No one was hit with the chair and the officer testified "I didn't see anybody, you know, around that could have been hit by the *326 chair." After throwing the chair, juvenile ran out of the cafeteria; the officer followed and without calling out to juvenile, grabbed him from behind. Juvenile initially cursed when Officer Ray caught him and then told him he was playing with his brother. The district court adjudicated the juvenile as delinquent for disorderly conduct and resisting a public officer. Juvenile appeals.
II. Petition for Disorderly Conduct
Juvenile first contends that his petition for disorderly conduct under North Carolina General Statute § 14-288.4 was defective because it is not clear which subsection of this statute he violated. The State contends it is "clear" it was proceeding under North Carolina General Statute § 14-288.4(a)(1) : "Because the charging language so closely tracks the statutory language of § 14-288.4(a)(1), the petition was sufficiently clear and provided the juvenile with adequate notice of the charged offense and the conduct which was the subject of the allegation." We need not address juvenile's argument regarding the petition because he will prevail on his second argument regarding his motion to dismiss. But we also note that based upon the State's argument that only North Carolina General Statute § 14-288.4(a)(1) applies, we will analyze the motion to dismiss for disorderly conduct under the elements of that subsection only.
III. Motion to Dismiss
Juvenile argues the trial court erred in denying his motion to dismiss both of the charges against him due to the insufficiency of the evidence.[1] "Where the juvenile moves to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) of juvenile's being the perpetrator of such *380 offense." In re Heil , 145 N.C. App. 24, 28, 550 S.E.2d 815, 819 (2001) (citation, quotation marks, ellipses, and brackets omitted).
In reviewing a challenge to the sufficiency of evidence, it is not our duty to weigh the evidence, but to determine whether there was substantial evidence to support the adjudication, viewing the evidence in the light most favorable to the State, and giving it the benefit of all reasonable inferences.
Id. at 29, 550 S.E.2d at 819.
A. Disorderly Conduct
Juvenile contends the trial court erred in denying his motion to dismiss due to the insufficiency of the evidence. North Carolina General Statute § 14-288.4(a)(1) provides that "[d]isorderly conduct is a public disturbance intentionally caused by any person who ... [e]ngages in fighting or other violent conduct or in conduct creating the threat of imminent fighting or other violence." N.C. Gen. Stat. § 14-288.4(a)(1) (2015). The State's argument focuses on the general definition of a "public disturbance" in North Carolina General Statute § 14-288.1 :
(8) Public disturbance.-Any annoying, disturbing, or alarming act or condition exceeding the bounds of social toleration normal for the time and place in question which occurs in a public place or which occurs in, affects persons in, or is likely to affect persons in a place to which the public or a substantial group has access. The places covered by this definition shall include, but not be limited to, highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood.
N.C. Gen. Stat. § 14-288.1(8) (2015).
The State does not cite any cases interpreting or discussing North Carolina General Statute § 14-288.1(8) or -288.4(a)(1). Not surprisingly, the issue in several of the cases addressing the specific subsections of North Carolina General Statute § 14-288.4 is whether the statute is unconstitutionally vague as many things could be considered "annoying, disturbing, or alarming" by one person but not by another. See, e.g., State v. Orange , 22 N.C. App. 220, 223, 206 S.E.2d 377, 379 (1974) ("Defendant does contend *327 that G.S. 14-288.4(a)(2) is unconstitutionally vague under the First Amendment."); State v. Clark , 22 N.C. App. 81, 87, 206 S.E.2d 252, 256 (1974) ("Defendant also argues that section (a)(2) of *381 G.S. 14-288.4, as amended in 1971, is unconstitutionally vague and overbroad."). But in State v. Strickland , 27 N.C. App. 40, 42-43, 217 S.E.2d 758, 759-60 (1975), this Court determined that although North Carolina General Statute § 14-288.1(8) -the definition of "public disturbance"-may be unconstitutionally vague standing alone, it must be read in conjunction with the specific acts which constitute a "public disturbance" under North Carolina General Statute § 14-288.4, and when considered together, the statute is not unconstitutionally vague:
The statute, G.S. 14-288.4(a), initially defines disorderly conduct in general terms as a public disturbance and then sets forth in subsequent subsections specific examples of conduct which is prohibited as disorderly conduct. It is a rule of construction, that when words of general import are used, and immediately following and relating to the same subject words of a particular or restricted import are found, the latter shall operate to limit and restrict the former. In order to ascertain what actions are violative of the statute as constituting disorderly conduct, one must look, not to the general definition of public disturbance, but to the specific examples of prohibited conduct as set forth in the subsections of the statute itself .
Id. at 43, 217 S.E.2d at 760 (emphasis added) (citations and quotation marks omitted). In fact, the State focuses on the portion of the definition in North Carolina General Statute § 14-288.1(8) which the Strickland Court "assum[ed] arguendo " was "unconstitutionally vague" and ignores the part of the statute which renders it constitutional, which is the additional detail regarding prohibited acts provided in North Carolina General Statute § 14-288.4(a)(4). Id.
Here, under North Carolina General Statute § 14-288.4(a)(1) the State must present evidence that the juvenile engaged in:
1. "fighting or"
2. "other violent conduct or "
3. "conduct creating the threat of imminent fighting or other violence"
N.C. Gen. Stat. § 14-288.4(a)(1). There was no evidence that the juvenile was "fighting" with anyone, so the only question before this Court is whether there was evidence of "other violent conduct or ... conduct creating the threat of imminent fighting or other violence." Id. The State *382 argues based almost entirely on the language of the general definition of "public disturbance" in North Carolina General Statute § 14-288.1(8) that "throwing a chair at another student is arguably an alarming act that exceeds the bounds of what is normally tolerated in a school cafeteria." The State contends the evidence shows "arguably violent conduct" because if the juvenile had thrown the chair at another student and if it hit them, "it presumably would have hurt them."
Although we view the evidence in the light most favorable to the State, see Heil , 145 N.C. App. at 29, 550 S.E.2d at 819, we do not go so far as to come up with hypothetical events that could have happened if juvenile actually did something in addition to what the actual evidence shows. Since the State does not address the elements of North Carolina General Statute § 14-288.4(a)(1) directly, it does not note any evidence which shows "violent conduct" or "conduct creating the threat of imminent fighting or other violence[,]" but that omission is likely because there is no such evidence. N.C. Gen. Stat. § 14-288.4(a)(1). In fact, the officer was specifically asked if he though juvenile "was playing, or did it seem like something that was a little more violent?" to which he responded, "I couldn't really tell[.]" The State simply asks we infer too much from the evidence it presented.
The evidence was not sufficient to show that the juvenile fought, engaged in violent conduct, or created an imminent risk of fighting or other violence. See id. Although there were other students in the cafeteria-a very large room-when the juvenile threw a chair, no other person was nearby, nor did the chair hit a table or another chair or anything else. Juvenile then ran out of the cafeteria. This is not "violent conduct or ... conduct creating the threat of imminent fighting or *328 other violence." Id. No one was hurt or threatened during the event and juvenile did not escalate the situation by yelling, throwing other things, raising fists, or other such conduct that along with the throwing of the chair could be construed to indicate escalating violent behavior. Throwing a single chair with no other person nearby and without attempting to hit another person and without hitting even any other item in the cafeteria is not disorderly conduct as defined by North Carolina General Statute § 14-288.4(a)(1). We vacate juvenile's adjudication and disposition for disorderly conduct.
B. Resisting a Public Officer
Juvenile also contends there was insufficient evidence he resisted a public officer. To adjudicate a juvenile for resisting a public officer there must be evidence:
*383 (1) that the victim was a public officer;
(2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;
(3) that the victim was discharging or attempting to discharge a duty of his office;
(4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and
(5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.
State v. Dammons , 159 N.C. App. 284, 294, 583 S.E.2d 606, 612 (2003) ; see N.C. Gen. Stat. § 14-223 (2015).
There is no dispute that Officer Ray was a public officer discharging a duty of his office. But the evidence does not support the remaining elements of North Carolina General Statute § 14-223. See generally Dammons , 159 N.C. App. at 294, 583 S.E.2d at 612. Officer Ray testified he never told juvenile to stop before he grabbed him by the shirt from behind. Officer Ray specifically testified that he "kind of, snuck up on him" and then grabbed juvenile by his shirt. Officer Ray was cross-examined on this point:
Q. Deputy Ray, in your earlier testimony, you say that you snuck up on ... [juvenile], correct?
A. I was, kind of, being sleek about it.
Q. And you did so, because you didn't want him to not come with you, correct?
A. Yes, ma'am.
Q. So at any point before you decided-before you grabbed him by the shirt, did you talk to him and explain to him why you were behind him?
A. No, ma'am.
Officer Ray never asked the juvenile to stop and intentionally snuck up on juvenile; the uncontroverted evidence shows juvenile was suddenly grabbed without any way of knowing who was grabbing him. Thus, the juvenile did not know or have "reasonable grounds to believe that the victim was a public officer" until after Officer Ray stopped him *384 and he saw that it was a police officer who grabbed him, not another student. Id.
There is also no evidence that juvenile "resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office[.]" Id. After juvenile saw that Officer Ray was the person who grabbed him, he did not hit, fight, or physically engage with the officer. While the State focuses on the fact that the juvenile yelled "no" and cursed when the officer grabbed him, his language does not rise to the level of a violation of North Carolina General Statute § 14-223, particularly as his statements appear to have been made when he was grabbed and before he knew who was grabbing him from behind:
Merely remonstrating with an officer in behalf of another, or criticizing an officer while he is performing his duty, does not amount to obstructing, hindering, or interfering with an officer;
Vague, intemperate language used without apparent purpose is not sufficient.
The Supreme Court of the United States has said that:
Although force or threatened force is not always an indispensable ingredient of the offense of interfering with an officer in the discharge of his duties, mere remonstrances or even criticisms of an *329 officer are not usually held to be the equivalent of unlawful interference.
State v. Allen , 14 N.C. App. 485, 491-92, 188 S.E.2d 568, 573 (1972) (citations, quotation marks, ellipses, and brackets omitted).
In addition, the evidence does not show that by saying "no" and cursing, juvenile "acted willfully and unlawfully, that is intentionally and without justification or excuse." Dammons , 159 N.C. App. at 294, 583 S.E.2d at 612. Most people would probably have some sort of similar reaction if grabbed from behind without knowing who was grabbing them. The State's other witness, Mr. Tate McQueen-teacher and soccer coach at the school-testified that during the ordeal,
there was a lot of adrenaline, and you know, after things settled down into the conference room, he was remarkably calm at that point. And he was very respectful in the conference room , once everything calmed down. I think in the moment with everybody watching him, and how that can play a role in the way young people behave, I think *385 once he was calming down in that environment, it settled down. It was between the point of where I came around the corner and saw that part, it was probably, maybe a minute-and-a-half, maybe .
(Emphasis added.) Within less than two minutes after being "snuck up on" and grabbed from behind, juvenile was "remarkably calm" and "very respectful[.]" Again, even considering the evidence in the light most favorable to the State, see Heil , 145 N.C. App. at 29, 550 S.E.2d at 819, the facts do not indicate resisting an officer. We vacate juvenile's adjudication and disposition for resisting a public officer.
IV. Conclusion
Because the State did not present sufficient evidence of disorderly conduct and resisting a public officer, we vacate the adjudication and disposition orders.
VACATED.
Judge ZACHARY concurs.
Judge ARROWOOD concurs in part and dissents in part.

The State contends juvenile did not preserve his argument to challenge the disorderly conduct adjudication when his motion to dismiss was for "no evidence of a disruption caused by" juvenile. We disagree because the sufficiency of the evidence was plainly raised in juvenile's attorney's motion despite use of the word "disruption" instead of "disorderly conduct."